# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SCOTT TOOLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-00306 (CKK) |
| | ) | |
| v. | ) | |
| | ) | |
| PRESIDENT GEORGE BUSH, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MOTION OF THE OFFICIAL CAPACITY DEFENDANTS TO DISMISS AND FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    **THE OFFICIAL CAPACITY DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FOIA CLAIMS** . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Attorney General Alberto Gonzales is Entitled to Summary Judgment . . . . . . . . 4

        1.    Plaintiff Failed to Exhaust the Necessary Administrative Remedies with Respect to his FOIA Requests to the FBI and EOUSA . . . . . . . . . . . . . . 5

            a.    The FBI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            b.    EOUSA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        2.    The Criminal Division Conducted an Adequate and Reasonable Search and Concluded that No Responsive Records Existed . . . . . . . . . . . . . . . . 8

    B.    DHS Secretary Michael Chertoff is Entitled to Summary Judgment . . . . . . . . . 10

    C.    TSA Director Edmund Hawley is Entitled to Summary Judgment . . . . . . . . . . . 13

        1.    Adequacy of TSA's Search . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        2.    The <u>Glomar</u> Response . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        3.    TSA's Request for Additional Information Prior to Releasing Two Potentially Responsive Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

II.    **THE COURT LACKS JURISDICTION OVER ANY REQUESTS FOR INJUNCTIVE RELIEF AGAINST THE OFFICIAL CAPACITY DEFENDANTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    A.    The Wiretapping Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    B.    The Watch List Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

    C.    The Radio Tag Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

# TABLE OF AUTHORITIES

## CASES

Allen v. Wright,
    468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

Am. Fed. of Gov't Employees v. Dept. of Commerce,
    632 F. Supp. 1272 (D.D.C.1986), aff'd, 907 F.2d 133 (D.C. Cir. 1990) . . . . . . . . . . . . 12

Am. Fed. of Gov't Employees v. Dept. of Commerce,
    907 F.2d 203 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 12

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives,
    2006 WL 141732 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Assassination Archives & Research Ctr., Inc. v. CIA,
    720 F.Supp. 217 (D.D.C. 1989),
    aff'd, 1990 WL 123924 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 13

Assoc. of Retired R.R. Workers, Inc. v. U.S. R.R. Retirement Bd.,
    830 F.2d 331 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Better Gov't Assn' v. Dept. of State,
    780 F.2d 86 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Breeden v. Univ. of Miss. Medical Ctr.,
    241 F. Supp. 2d 668 (S.D. Miss. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981)
    aff'd on other grounds, 460 U.S. 325 (1983) . . . . . . . . . . . . . . . . . . . . . . . . .  25, 33

Brunetti v. Fed. Bureau of Investigation,
    357 F. Supp. 2d 97 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Campbell v. U.S. Dept. of Justice,
    164 F.3d 20 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Central Intelligence Agency v. Sims,
    471 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 18

Ciralsky v. Central Intelligence Agency,
    355 F.3d 661 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

City of Los Angeles v. Lyons,
    461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 31, 36

Consejo Puertorriqueno Por La Paz v. Director, Fed. Bureau of Investigation,
    458 F. Supp. 1041 (D.D.C. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Dale v. Internal Revenue Serv.,
    238 F. Supp. 2d 99 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 12, 15

Defenders of Wildlife v. U.S. Dept. of Interior,
    314 F. Supp. 2d 1 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Edmonds v. Fed. Bureau of Investigation,
    272 F. Supp. 2d 35 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Elec. Privacy Info. Ctr. v. Dept. of Homeland Security,
    384 F. Supp. 2d 100 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Express Corp. v. Airline Pilots Ass'n,
    67 F.3d 961 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

First Nat'l Bank of Arizona v. Cities Serv. Co.,
    391 U.S. 253 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fitzgibbon v. Central Intelligence Agency,
    911 F.2d 755 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Flowers v. Exec. Ofc. of the President,
    142 F. Supp. 2d 38 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fraternal Order of Police v. Rubin,
    134 F. Supp. 2d 39 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Friends of the Earth, Inc. v. Laidlaw,
    528 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Gardels v. Central Intelligence Agency,
    689  F.2d 1100 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20, 21

Gilmore v. Gonzales,
    435 F.3d 1125 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Goland v. Central Intelligence Agency,
    607 F.2d 339 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12, 17

Gordon v. Fed. Bureau of Investigation,
    388 F. Supp. 2d 1028 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Gordon v. Fed. Bureau of Investigation,
    390 F. Supp. 2d 897 (N.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

In re Grand Jury Proceedings,
    525 F. Supp. 831 (D.S.C. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Green v. Transp. Security Admin.,
    351 F. Supp. 2d 1119 (W.D. Wash. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Greene v. Dalton,
    164 F.3d 671 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Haase v. Sessions,
    835 F.2d 902 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Halkin v. Helms,
    598 F.2d 1 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Halkin v. Helms,
    690 F.2d 977 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Hall v. Central Intelligence Agency,
    437 F.3d 94 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

 Haynesworth v. Miller,
    820 F.2d 1245, 1254 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Hidalgo v. Fed. Bureau of Investigation,
    344 F.3d 1256 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

Hohri v. United States,
    782 F.2d 227 (D.C. Cir. 1986),
    vacated on other grounds, 483 U.S. 64 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Intercommunity Relations Council of Rockland Cty., Inc., v.
    U.S. Dept. of Health & Human Servs.,
    859 F. Supp. 81 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Judicial Watch, Inc. v. U.S. Senate,
    432 F.3d 359 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Judicial Watch v. Rossotti,
    285 F. Supp. 2d 17 (D.D.C. 2003)  (Collyer, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Keese v. United States,
    632 F.Supp. 85 (S.D.Tex.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Kidd v. Dept. of Justice,
    362 F. Supp. 2d 291 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Kissinger v. Reporters Comm. for Freedom of the Press,
    445 U.S. 136 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

Kowal v. MCI Communications Corp.,
    16 F.3d 1271 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 33

Laird v. Tatum,
    408 U.S. 1, 14 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Landmark Legal Found. v. Environmental Protection Agency,
    272 F. Supp. 2d 59 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 31

Lynch v. Household Finance Corp.,
    405 U.S. 538 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Martin v. Court Servs. & Offender Supervision Agency,
    2005 WL 3211536 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Mason v. Callaway,
    554 F.2d 129 (4th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

 McNutt v. Gen. Motors Acceptance Corp.,
    298 U.S. 178, 179 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Meeropol v. Meese,
    790 F.2d 942 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Military Audit Project v. Casey,
    656 F.2d 724 (D.C. Cir.1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Miller v. Reed,
    176 F.3d 1202 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Nat'l Treas. Employees Union v. United States,
    101 F.3d 1423 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

O'Shea v. Littleton,
    414 U.S. 488 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

Oglesby v. U.S. Dept. of the Army,
    920 F.2d 57 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 7, 9, 16

Perry v. Block,
    684 F.2d 121 (D.C.Cir.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Phillippi v. Central Intelligence Agency,
    546 F.2d 1009 (D.C. Cir.1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Public Citizen v. Fed. Aviation Admin.,
    988 F.2d 186 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Raynes v. Bird,
    521 U.S. 811 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

Schlesinger v. Reservists Committee to Stop the War,
    418 U.S. 208 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

Schrecker v. United States Dept. of Justice,
    217 F. Supp. 2d 29, 34-35 (D.D.C. 2002) (Lamberth, J.),
    aff'd, 349 F.3d 657 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Shaw v. Dept. of State,
    559 F.Supp. 1053 (D.D.C.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 26

Simon v. Eastern Ky. Welfare Rights Org.,
    426 U.S. 26 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

Sonds v. Huff,
    391 F. Supp. 2d 152 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Steinberg v. Dept. of Justice,
    23 F.3d 548 (D.C. Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 10, 16

Swierkiewicz v. Sorema, N.A.,
    534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Tax Analysts v. Internal Revenue Serv.,
    117 F.3d 607 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

United Presbyterian Church in the U.S.A. v. Reagan,
    738 F.2d 1375 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29, 30

United States v. Davis,
    482 F.2d 893 (9th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   33

United States v. Edwards,
    498 F.2d 496 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   33

Valencia-Lucena v. U.S. Coast Guard,
    180 F.3d 321, 326 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,
    454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23, 29

Vanover v. Hantman,
    77 F. Supp. 2d 91 (D.D.C. 1999), aff'd, 38 Fed. Appx. 4, 2002 WL 1359630
    (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

Vaughn v. Rosen,
    484 F.2d 820 (D.C. Cir.1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

Voinche v. Fed. Bureau of Investigation,
    412 F. Supp. 2d 60 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

Warth v. Seldin,
    422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27, 28, 29, 32

Weinberger v. Romero-Barcelo,
    456 U.S. 305 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34

Weisberg v. Dept. of Justice,
    745 F.2d 1476 (D.C. Cir.1984)) (internal quotes omitted . . . . . . . . . . . . . . . . . . . . .   9, 16

Western Ctr. for Journalism v. Internal Revenue Serv.,
    116 F. Supp. 2d 1 (D.D.C.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

Whittle v. Moschella,
    756 F. Supp. 589 (D.D.C. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

Wilbur v. CIA,
    355 F.3d 675 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5, 7

Younger v. Harris,
    401 U.S. 37 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34

## STATUTES

6 C.F.R. § 5.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 C.F.R. § 16.3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

49 C.F.R. § 1520.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

49 C.F.R. § 1520.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

49 C.F.R. § 1542.303 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

49 C.F.R. § 1544.305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 23

Fed. R. Civ. P. 41(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pub. L. No. 93-366, § 202, 88 Stat. 409, 417 (Aug. 5, 1974) . . . . . . . . . . . . . . . . . . . . . 18

5 U.S.C. § 552(a)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

5 U.S.C. § 552(f)(1) (defining "agency") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Privacy Act, 5 U.S.C. § 552a(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

28 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

49 U.S.C. § 114(l) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

49 U.S.C. § 114(s) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 34

49 U.S.C. App. § 1357(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

49 U.S.C. § 44902(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

49 U.S.C. § 46110(a) & (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## INTRODUCTION

By letter dated October 3, 2005, plaintiff Scott Tooley, through his counsel, sought

information from the Department of Justice, the Department of Homeland Security and the

Transportation Security Administration under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552. Plaintiff's requests broadly sought "all . . . documents or things" maintained by

these agencies that "refer . . . to Scott Tooley." On February 21, 2006, plaintiff filed his

Complaint in this action alleging that Defendants Attorney General Alberto Gonzales, Secretary

of the Department of Homeland Security Michael Chertoff, and Administrator of the

Transportation Security Administration Edmund Hawley, in their official capacities, had failed to

meet their obligations under FOIA, and seeking judicial relief.

The three official capacity defendants – Attorney General Gonzales, Secretary Chertoff,

and Administrator Hawley[1] – hereby seek summary judgment with respect to plaintiff's claims

for relief under FOIA. As fully explained in Part I below, the agencies for which these

defendants are responsible have all responded to plaintiff's FOIA requests, and none has

improperly withheld agency records from plaintiff. Accordingly, plaintiff is not entitled to relief

on his FOIA claims, and these defendants are entitled to summary judgment.[2]

Moreover, although the most reasonable reading of plaintiff's Complaint is that the

official capacity defendants are sued only for relief in conjunction with their responses to

plaintiff's FOIA claims, even if the Complaint could be read to seek other injunctive relief

---

[1] Undersigned counsel represents these three defendants only in their official capacities. This motion does not address any individual capacity claim made against any defendant.

[2] As required by the Local Rules, a Statement of Material Facts as to which there is no genuine issue is appended hereto in support of the motion for summary judgment. Specific facts relevant to each defendant's response to plaintiff's FOIA request are described hereafter in the Argument section related to each defendant.

against the three official capacity defendants, the Court lacks jurisdiction to enter the relief

sought and dismissal is required under Federal Rule of Civil Procedure 12(b)(1).  As to any such

claims, accordingly, Attorney General Gonzales, Secretary Chertoff, and Administrator Hawley,

in their official capacities, seek dismissal from this lawsuit.

**ARGUMENT**

**I.    THE OFFICIAL CAPACITY DEFENDANTS ARE ENTITLED TO SUMMARY
JUDGMENT ON PLAINTIFF'S FOIA CLAIMS.**

Count IV of plaintiff's complaint seeks declaratory judgment against the three official

capacity defendants for alleged violations of FOIA.[3]  Specifically, plaintiff alleges that, by letter

dated October 3, 2005, through his counsel, he submitted a FOIA request to the Department of

Justice ("DOJ"), the Department of Homeland Security ("DHS"), and the Transportation Security

Administration ("TSA").  Compl. ¶¶ 26-27.  All of the FOIA requests sought

> all filings, correspondence, memoranda, documents, reports, records, statements,
> audits, lists of names, applications, diskettes, letters, expense logs and receipts,
> calendar or diary logs, facsimile logs, telephone records, call sheets, tape records
> [sic], video recordings, notes, examinations, and/or referenced opinions, folders,
> files, books, manuals, pamphlets, forms, drawings, charts, photographs, electronic
> mail, and any other documents or things that refer to my client Scott Tooley.

See, e.g., Declaration of David M. Hardy ("Hardy Decl."), attached as Ex. A, ¶ 5 & Ex. A (FOIA

request to DOJ); Declaration of J. Anthony Kendrick, attached as Ex. D, ¶ 6 & Attachment 1

---

[3]    The Court's jurisdiction under FOIA is limited to adjudicating agency noncompliance.
5 U.S.C. § 552(a)(4)(B).  The appropriate defendant to a FOIA claim, accordingly, is the agency,
and not any individual defendant.  5 U.S.C. § 552(f)(1) (defining "agency"); see also Whittle v.
Moschella, 756 F. Supp. 589, 596 (D.D.C. 1991).  Because the three official capacity defendants
named in plaintiff's suit are the heads of the three agencies to which plaintiff alleges he
submitted FOIA requests, it is assumed, for purposes of this motion only, that plaintiff has named
these officials as defendants in their official capacity in lieu of the more proper course of naming
the agencies they represent.  Moreover, specifically with respect to plaintiff's FOIA allegations
regarding TSA, in addition to plaintiff's error in naming official capacity defendants instead of
the agency, plaintiff has also improperly named TSA Administrator Hawley as a defendant
because TSA is a component of DHS; thus, DHS is the proper agency defendant.

(FOIA request to DHS); Declaration of Catrina M. Pavlick, attached as Ex. E, ¶ 4 & Ex. A
(FOIA request to TSA).  Plaintiff complains that the official capacity defendants have "refused to
turn over requested documents, refused to grant expedited processing, and refused to consider
any fee waivers."  Compl. ¶ 78.  On the basis of these allegations, plaintiff "demands . . . [t]hat
this Court issue a declaratory judgment affirming Defendants' duty to provide all information
contained in Mr. Tooley's Public Records Requests and ordering Defendants to do so
immediately."  Compl. at 15.

  As fully described herein, Attorney General Gonzales, DHS Secretary Chertoff, and TSA
Administrator Hawley are entitled to summary judgment on plaintiff's requests for relief under
FOIA.  All three agencies responded to plaintiff's FOIA requests, and none of them improperly
withheld documents.  Moreover, in light of the responses of all three agencies, plaintiff's request
for expedited processing is moot.  See Landmark Legal Found. v. Environmental Protection
Agency, 272 F. Supp. 2d 59, 62 (D.D.C. 2003) (Lamberth, J.) ("The only question for summary
judgment is whether the agency finally conducted a reasonable search, and whether its
withholdings are justified. When exactly a reasonable search was conducted is irrelevant.")
(citations omitted).  And, in light of the fact that no responding agency assessed plaintiff any
fees, plaintiff's request for a fee waiver is equally moot.  See Hall v. Central Intelligence Agency,
437 F.3d 94, 99 (D.C. Cir. 2006) (where fees are not charged, challenge to denial of fee waiver is
moot because plaintiff  "already has 'obtained everything that [he] could recover . . . by a
judgment of this court in [his] favor.'") (quoting Better Gov't Ass'n v. Dept. of State, 780 F.2d
86, 91 (D.C. Cir.1986)).

  Summary judgment should be granted if the movant has shown, when the facts are
viewed in the light most favorable to the nonmovant, that there are no genuine issues of material

fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>see</u>

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Greene v. Dalton</u>, 164 F.3d 671, 674

(D.C. Cir. 1999).  A party opposing a motion for summary judgment "may not rest upon the mere

allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a

genuine issue for trial."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) (quoting

<u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 288 (1968)).  In a FOIA case, the

Court may award summary judgment to an agency on the basis of information provided in

affidavits or declarations that describe "the documents and the justifications for nondisclosure

with reasonably specific detail, demonstrate that the information withheld logically falls within

the claimed exemption, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith."  <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C.

Cir.1981); <u>see</u> <u>also</u> <u>Vaughn v. Rosen</u>, 484 F.2d 820, 826 (D.C. Cir.1973).  Under these standards,

the three official capacity defendants are entitled to summary judgment.

**A.    Attorney General Alberto Gonzales is Entitled to Summary Judgment.**

Under DOJ regulations, <u>see</u> 28 C.F.R. § 16.3(a), plaintiff's October 3, 2005, FOIA

request, which was addressed to the FOIA/PA Referral Unit of the Justice Management Division

("JMD"), was routed by that Division to "the component(s) it believes most likely to have the

records that [the requester] want[s]."  <u>Id.</u>  Here, plaintiff's FOIA request was routed by JMD to

three components:  the Federal Bureau of Investigation ("FBI"), the Executive Office of United

States Attorneys ("EOUSA"), and the DOJ's Criminal Division.  <u>See</u> Hardy Decl. Ex. A (JMD

Routing Slip).  All three of these components responded to plaintiff's request in a manner fully

compliant with the requirements of FOIA, and plaintiff can seek no relief against the Attorney

General arising from their responses.

1.      Plaintiff Failed to Exhaust the Necessary Administrative Remedies
        With Respect to His FOIA Requests to the FBI and EOUSA.

    a.      The FBI

The FBI received plaintiff's request for records from JMD on October 25, 2006.  Hardy

Decl. ¶ 5.  On October 28, 2005, FBI responded to plaintiff's request and advised him that "a

search of automated indices to our central records file system at FBI Headquarters located no

records responsive to your [FOIA] request."  Id. ¶ 6 & Ex. B.  The letter advised plaintiff that he

was entitled to file an administrative appeal within 60 days.  Id.  No appeal was filed.  Id. ¶ 7.

    Plaintiff's failure to file a timely administrative appeal of the FBI's response to his FOIA

request precludes judicial review.  See Oglesby v. U.S. Dept. of the Army, 920 F.2d 57, 61-62

(D.C. Cir. 1990) ("Exhaustion of administrative remedies is generally required before filing suit

in federal court so that the agency has an opportunity to exercise its discretion and expertise on

the matter and to make a factual record to support its decision."); see also Wilbur v. CIA, 355

F.3d 675, 677 (D.C. Cir. 2004); Hidalgo v. Fed. Bureau of Investigation, 344 F.3d 1256, 1259

(D.C. Cir. 2003).  The FBI, accordingly, is entitled to summary judgment.  See Elec. Privacy

Info. Ctr. v. Dept. of Homeland Security, 384 F. Supp. 2d 100, 106 (D.D.C. 2005) (Urbina, J.)

("A requester dissatisfied with the agency's response that no records have been found may

challenge the adequacy of the agency's search by filing a lawsuit in the district court after

exhausting any administrative remedies") (quoting Valencia-Lucena v. U.S. Coast Guard, 180

F.3d 321, 326 (D.C. Cir. 1999)) (emphasis added); see also Martin v. Court Servs. & Offender

Supervision Agency, 2005 WL 3211536 (D.D.C. 2005) (Bates, J.) (dismissing plaintiff's FOIA

claims for lack of exhaustion where plaintiff failed to appeal a "no records" response).

    In any event, as fully described in the declaration of Mr. Hardy, the FBI conducted an

automated search of its central records system and located no records responsive to plaintiff's

request at FBI Headquarters.  Hardy Decl. ¶¶ 19-20; see also id. ¶¶ 8-18 (describing FBI's

records system).  As no responsive records were located, the FBI did not improperly withhold

any responsive records.  See 5 U.S.C. § 552(a)(4)(B) (providing jurisdiction only to "enjoin the

agency from withholding agency records and to order the production of any agency records

improperly withheld. . ."); Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S.

136, 150 (1980) ("Under 5 U.S.C. § 552(a)(4)(B)[,] federal jurisdiction is dependent upon a

showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'"); see also

Voinche v. Fed. Bureau of Investigation, 412 F. Supp. 2d 60, 66 (D.D.C. 2006) (Lamberth, J.)

(granting summary judgment to FBI where search of central records system for plaintiff's name

was "adequate to fulfill its obligations under FOIA"); Brunetti v. Fed. Bureau of Investigation,

357 F. Supp. 2d 97, 103 (D.D.C. 2004) (Leon, J.) (finding that an adequate search had been done

where FBI conducted a CRS search that produced one responsive file); Edmonds v. Fed. Bureau

of Investigation, 272 F. Supp. 2d 35, 58 (D.D.C. 2003) (Huvelle, J.) (holding that the FBI

performed an adequate search for responsive records where the affidavit detailed a search of the

CRS system).  The FBI, accordingly, did not violate FOIA.

> b.    EOUSA

EOUSA received plaintiff's FOIA request from JMD on October 26, 2005, and

responded by letter dated November 8, 2005.  Declaration of Anthony J. Ciccone ("Ciccone

Decl."), attached as Ex. B, ¶¶ 4, 10 & Exs. 1-3.  EOUSA advised plaintiff that "the files and

records of United States Attorneys are located in more than 100 separate offices" and asked

plaintiff to "identify the specific U.S. Attorney's office(s) where you believe the requested

records exist."  Id., Ex. 3.  EOUSA further advised plaintiff that such identifying information was

to be provided in a new FOIA request and that "this is a final determination and your request for

information has been closed." Id.  The letter advised plaintiff that he was entitled to file an

administrative appeal.  Id.  EOUSA received no further information from plaintiff, id. ¶ 13; and

no administrative appeal was filed.  Id. ¶ 14.

　　As with the FBI, plaintiff's failure to file a timely administrative appeal of EOUSA's

final determination precludes review by this Court.  See Oglesby, 920 F.2d at 61-62; Wilbur, 355

F.3d at 677; Hidalgo, 344 F.3d at 125; see also Antonelli v. Bureau of Alcohol, Tobacco,

Firearms & Explosives, 2006 WL 141732 (D.D.C. 2006) (Kollar-Kotelly, J.) (finding that

plaintiff failed to exhaust requisite administrative remedies where he refused to respond to

Department of Transportation's request for specification as to which of 150 systems of records

maintained by the Department were likely to contain records responsive to plaintiff's request).

　　In any event, there was nothing improper about EOUSA's response to plaintiff's FOIA

request.  FOIA contemplates that records requests must "reasonably describe" the records sought,

see 5 U.S.C. § 552(a)(3)(A), and DOJ regulations prescribe procedures for clarifying ambiguous

requests.  The courts have declared that a reasonable description is one that would enable a

professional employee of the agency who is familiar with the subject area of the request to locate

the record with a reasonable amount of effort.  See, e.g., Goland v. Central Intelligence Agency,

607 F.2d 339, 353 n.88 (D.C. Cir. 1978); Am. Fed. of Gov't Employees v. Dept. of Commerce,

907 F.2d 203, 208-09 (D.C. Cir. 1990).  Under DOJ regulations, where a  "component

determines that [a] request does not reasonably describe records, it shall tell [the requester] . . . so

that [the requester] . . . may modify it to meet the requirements of [FOIA]."  28 C.F.R. § 16.3(b).

　　In responding to plaintiff's request, EOUSA followed this regulatory procedure designed

to clarify ambiguities.  Ciccone Decl. ¶¶ 10-12.  Plaintiff failed to either submit a clarification or

file an administrative appeal.  Id. ¶¶ 13-14.  Where no reasonable request was presented, EOUSA

did not violate FOIA.  See Dale v. Internal Revenue Serv., 238 F. Supp. 2d 99, 103 (D.D.C.

2002) (Bates, J.) (agency's "obligation under FOIA begins only upon receipt of a valid request");

see also id. at 104 ("FOIA requests for all documents concerning a requester are too broad")

(emphasis in original).  Thus, EOUSA did not improperly withhold documents from plaintiff.

          2.       The Criminal Division Conducted an Adequate and Reasonable
                      Search and Concluded That No Responsive Records Existed.

       DOJ's Criminal Division acknowledged receipt of plaintiff's FOIA request by letter dated

November 22, 2005.  Declaration of Kathy Hsu ("Hsu Decl."), attached as Ex. C, ¶ 5 & Ex. 1.

The acknowledgment letter further informed plaintiff that his original request was deficient and

that before further action could be taken, additional information would be required.  Id.

Specifically, the Criminal Division requested a "Privacy Act Identification and Request Form,"

and an indication of the specific Criminal Division systems of records that plaintiff sought to be

searched.  Id.  By letter dated December 21, 2005, plaintiff responded to this request by

returning the required form, and identifying four systems of records to be searched:

JUSTICE/CRM-003 (File of Names Checked to Determine if those Individuals have been the

Subject of an Electronic Surveillance); JUSTICE/CRM-018 (Registration Files of Individuals

who have Knowledge of, or have Received Instruction or Assignment in Espionage,

Counterespionage, or Sabotage Service or Tactics of a Foreign Government or a Foreign Political

Party); JUSTICE/CRM-019 (Requests to the Attorney General for Approval to Federal Judges

for Electronic Interceptions); and JUSTICE/CRM-024 (Freedom of Information/Privacy Act

Records).  Hsu Decl. ¶¶ 6 & Ex. 3.

       Upon receipt of this information from plaintiff, the Criminal Division initiated a search of

its records.   In addition to searching the four systems of records specifically designated by

plaintiff, the Criminal Division also searched JUSTICE/CRM-001 (Central Criminal Division

Index File and Associated Records), which is searched as a matter of course when the Criminal

Division receives a request for records related to any individual requester.  See Hsu Decl. ¶ 9.

Moreover, based upon its experience processing FOIA requests, the Criminal Division FOIA/PA

Unit also requested that the Counterterrorism Section of the Criminal Division conduct a search

for records.  Id. ¶ 11.  As Ms. Hsu attests, as a result of these searches, no records responsive to

plaintiff's request were located.  Id. ¶ 13.  Plaintiff was so notified by letter dated March 21,

2006, and was advised of his rights to appeal.  Id. ¶ 8 & Ex. 5.

　　　　To obtain summary judgment on the issue of the adequacy of the records search, an

agency must show "viewing the facts in the light most favorable to the requester, that . . . [it] has

conducted a search reasonably calculated to uncover relevant documents."  Steinberg v. Dept. of

Justice, 23 F.3d 548, 552 (D.C. Cir.1994) (citing Weisberg v. Dept. of Justice, 745 F.2d 1476,

1485 (D.C. Cir.1984)) (internal quotes omitted).  To meet its burden, the agency may submit

affidavits or declarations that explain both in reasonable detail and in a non-conclusory fashion

the scope and method of the agency's search.  Perry v. Block, 684 F.2d 121, 126 (D.C.Cir.1982).

In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate

an agency's compliance with FOIA.  Id. at 127.  An agency must show that it made a "good faith

effort to conduct a search for the requested records, using methods which can be reasonably

expected to produce the information requested."  Ogelsby, 920 F.2d at 68; accord Campbell v.

U.S. Dept. of Justice, 164 F.3d 20, 27 (D.C. Cir. 1998).  An agency's search need not be

exhaustive, merely reasonable. See Western Ctr. for Journalism v. Internal Revenue Serv., 116

F. Supp. 2d 1, 8 (D.D.C.2000) (citing Shaw v. Dept. of State, 559 F.Supp. 1053, 1057

(D.D.C.1983)); see also Judicial Watch v. Rossotti, 285 F. Supp. 2d 17, 26 (D.D.C. 2003)

(Collyer, J.) ("Perfection is not the standard by which the reasonableness of a FOIA search is

measured.").  Indeed, the Court of Appeals has stressed that "[i]t would be unreasonable to expect even the most exhaustive search to uncover every file." Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C. Cir. 1986).  Accordingly, in examining the adequacy of an agency's search, the Court must not address "whether there might exist additional documents possibly responsive to a request, but rather whether the search for those documents was adequate." Steinberg, 23 F.3d at 551 (citing Weisberg, 745 F.2d at 1485).

The affidavit provided on behalf of the Criminal Division plainly demonstrates that the Criminal Division performed an adequate search in response to plaintiff's request for records. Each of the four systems of records specifically designated by plaintiff for search was searched and, additionally, based on the nature of plaintiff's FOIA request, an additional system of records (CRM-001) and the Counterterrorism Section were also searched.  No responsive records were located in any of these searches.  Thus, the Criminal Division did not improperly withhold agency records.  See Kissinger, 445 U.S. at 150; see also Kidd v. Dept. of Justice, 362 F. Supp. 2d 291, 294-95 (D.D.C. 2005) (Kennedy, J.) (granting summary judgment in favor of DOJ on basis of declaration that attested to the records and databases searched, the general processes in the searches, the search terms used, the search dates, the offices which conducted searches, and the records located).

Accordingly, because the FBI, EOUSA, and the Criminal Division all properly responded to plaintiff's FOIA request, Attorney General Gonzales is entitled to summary judgment.

### B.    DHS Secretary Michael Chertoff is Entitled to Summary Judgment.

DHS responded to plaintiff's FOIA request on October 5, 2005.  Declaration of J. Anthony Kendrick ("Kendrick Decl."), attached as Ex. D, ¶ 8 & Attachment 2.  DHS advised plaintiff that "The Department of Homeland Security does not maintain a central index of records

based upon individual names," and that, thus, plaintiff's request, which sought "any and all . . . DHS documents which refer to . . . Scott Tooley" did not provide sufficient information to conduct an adequate search.  Id., Attachment 2; see also id. ¶¶ 5, 7.  DHS sought clarification of plaintiff's request within 60 days, and advised plaintiff that "if we do not hear from you within 60 days of the date of this letter, we will assume you are no longer interested in this FOIA request."  Id., Attachment 2.  Plaintiff made no response.  Kendrick Decl. ¶ 8.

Under FOIA, an agency is required to process "any request for records which (i) reasonably describes such records, and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed."  5 U.S.C. § 552(a)(3)(A).  DHS regulations provide in pertinent part that, when making a FOIA request, the requester must describe the records [sought] in enough detail to enable Department personnel to locate them with a reasonable amount of effort.  Whenever possible, [the] request should include specific information about each record sought, such as the date, title or name, author, recipient, and subject matter of the record."  6 C.F.R. § 5.3.  As described in the Declaration of J. Anthony Kendrick, the Director of Departmental Disclosure for DHS, the agency's regulations contain these provisions because "the Department does not maintain a central index of records that are retrieved by name or personal identifier, and so it is important to understand the nature of the request in context; i.e., why the requester believes that DHS may have records pertaining to the requester."  Kendrick Decl. ¶ 5.  Absent "file- or event- related information or any details as to why the Department would maintain records" about any particular requester, DHS's FOIA staff "cannot even begin to search for records."  Id. ¶ 7.

An agency's "obligation under FOIA begins only upon receipt of a valid request," Dale, 238 F. Supp. at 103, i.e., when it receives "any request for records which (i) reasonably describes

such records, and (ii) is made in accordance with published rules stating the time, place, fees (if

any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). Under FOIA, a request

"reasonably describes" records if "the agency is able to determine precisely what records are

being requested." Tax Analysts v. Internal Revenue Serv., 117 F.3d 607, 610 (D.C. Cir. 1997).

A description would be sufficient if it enabled a professional employee of the agency familiar

with the subject area of the request to locate the record with a reasonable amount of effort.

Goland, 607 F.2d at 353 n.88. Broad, sweeping requests lacking specificity are not sufficient.

Am. Fed. of Gov't Employees v. Dept. of Commerce, 632 F. Supp. 1272, 1277 (D.D.C.1986),

aff'd, 907 F.2d 133 (D.C. Cir. 1990).

Courts have repeatedly found that "FOIA requests for all documents concerning a

requester are too broad." Dale, 238 F. Supp. at 104; see Mason v. Callaway, 554 F.2d 129, 131

(4th Cir. 1977) (request for "all correspondence, documents, memoranda, tape recordings, notes,

and any other material pertaining to the atrocities committed against plaintiffs, . . . including, but

not limited to, the files of [various government offices] . . . typifies the lack of specificity that

Congress sought to preclude in the requirement of 5 U.S.C. § 552(a)(3) that records sought be

reasonably described"); Keese v. United States, 632 F.Supp. 85, 91 (S.D.Tex.1985) ( "Requests

for all documents containing a requester's name are not reasonably specific as required by the

FOIA."). "[T]he rationale for this rule is that FOIA was not intended to reduce government

agencies to full-time investigators on behalf of requesters." Assassination Archives & Research

Ctr., Inc. v. CIA, 720 F.Supp. 217, 219 (D.D.C. 1989), aff'd, 1990 WL 123924 (D.C. Cir. 1990).

Thus, an agency need not honor a request that requires "an unreasonably burdensome search."

Am. Fed. of Gov't Employees, 907 F.2d at 209 (citing Goland, 607 F.2d at 353). On its face,

therefore, plaintiff's request failed to meet the requirements of FOIA, and DHS had no obligation

to respond to it.

This is particularly so where it is well established that "agencies are not required to perform searches which are not compatible with their own document retrieval systems." Sonds v. Huff, 391 F. Supp. 2d 152, 160 (D.D.C. 2005) (Friedman, J.) (quoting Judicial Watch, Inc. v. Export-Import Bank, 108 F.Supp. 2d 19, 27 (D.D.C. 2000) (Lamberth, J.) (citation omitted)); accord Assassination Archives & Research Ctr., Inc., 720 F. Supp. at 219. DHS here notified plaintiff that it "does not maintain a central index of records based on individual names." Kendrick Decl., Attachment 2. DHS provided plaintiff an opportunity to cure the deficiencies in his request, but plaintiff did not respond. Id. ¶ 8. Plaintiff's unamended request, however, was not amenable to search at DHS. See id. ¶¶ 5, 7-8; see also Sonds, 391 F. Supp. 2d at 160 (granting summary judgment to agency because where "DEA's files are indexed by names, dates of birth, and social security numbers, DEA reasonably determined that plaintiff's requests for information about an arson, the apparent surveillance of certain streets or neighborhoods, the Mercedes-Benz and Cadillac, and his additional two requests of October 2, 2003, were either too vague for it to process or not amenable to a search"). Secretary Chertoff, accordingly, should be granted summary judgment on plaintiff's FOIA claim.

## C.    TSA Director Edmund Hawley is Entitled to Summary Judgment.

TSA received plaintiff's FOIA request on October 4, 2005. Declaration of Catrina M. Pavlick ("Pavlick Decl."), attached as Ex. E, ¶ 4. By letter dated October 4, 2005, TSA acknowledged receipt of the plaintiff's October 3, 2005, FOIA Request. Pavlick Decl. ¶ 6 & Ex. C. In light of the broad scope of plaintiff's FOIA request, on October 5, 2005, TSA's Freedom of Information Act Officer, Catrina M. Pavlick, contacted plaintiff's counsel, Mr. Larry Klayman, to discuss the scope of the request and – in an effort to help focus TSA's search for

responsive records – to obtain more information about Mr. Tooley's association or contacts with TSA.  Pavlick Decl. ¶ 7.  Based on this conversation, Ms. Pavlick understood that Mr. Klayman had narrowed the scope of his request to seek any record concerning the appearance of Mr. Tooley's name on a TSA watch list.  Pavlick Decl. ¶ 7.  Thus, TSA limited the scope of its initial search for responsive records to any TSA watch list records concerning Mr. Tooley.  Pavlick Decl. ¶ 7; see also id. ¶ 15.

Following some further correspondence regarding plaintiff's requests for expedited processing and a fee waiver, see id. ¶ 7 & Ex. D, on December 8, 2005, TSA made its initial response to plaintiff's FOIA request, advising plaintiff that "[t]o ensure transportation security, TSA does not disclose the names and identifying information of individuals on TSA watch lists." Id. ¶ 8 & Ex. E.  The response letter also notified plaintiff that the TSA Office of Ombudsman offered a procedure to expedite watch list procedures and provided the contact information for that office.  Id.; see also id. ¶¶ 10-11.  Finally, the response letter advised plaintiff of his appeal rights.  Id. Ex. E.

On February 7, 2006, plaintiff appealed TSA's determination, advising TSA that its response was unresponsive, and what plaintiff sought was ". . . any other documents or things that refer to Scott Tooley."  Pavlick Decl. ¶ 9 & Ex. F.  On April 24, 2006, TSA responded to plaintiff's appeal, advising plaintiff that TSA upheld its original determination that it would not confirm nor deny the existence of records indicating whether Mr. Tooley is on a watch list, but that it had undertaken a search for other records responsive to plaintiff's request in ten different offices of TSA, and had identified two potentially responsive records.  Id. ¶¶ 10-11 & Ex. G. TSA noted that it was unable to ascertain from the limited information provided in plaintiff's FOIA request whether the potentially responsive records located were records that related to

plaintiff or to some other individual with a similar name, and thus sought additional information

from plaintiff. Id. TSA requested that plaintiff provide such information to undersigned counsel

by April 27, 2006. Id. As of the date of this filing, plaintiff has made no response.

The Declaration of Ms. Pavlick demonstrates that there is nothing improper about TSA's

response to plaintiff's FOIA request.

      1.    Adequacy of TSA's Search.

TSA conducted a reasonable and adequate search for documents responsive to plaintiff's

request. Originally, based upon a conversation between TSA's FOIA Office and plaintiff's

counsel, Mr. Klayman, TSA understood that plaintiff's broad request had been narrowed to seek

only information concerning whether plaintiff was on a TSA watch list. See Pavlick Decl. ¶ 5.

TSA responded to that request on December 8, 2005, by refusing to confirm or deny the

existence of plaintiff on a TSA watch list. Pavlick Decl. ¶ 11 & Ex. F.

Upon receiving plaintiff's appeal of the December 8, 2005, determination, TSA

conducted a second search for responsive records by identifying those TSA offices most likely to

have records concerning members of the general public. Pavlick Decl. ¶ 16. As a result of this

effort, ten offices were identified and directed to search for responsive records: the Executive

Secretariat, Office of Chief Counsel, Legislative Affairs, Office of Transportation Security

Intelligence, Operations and Technical Training Divisions, Internal Affairs, Office of Human

Capital, Security Operations, Office of Transportation Threat Assessment and Credentialing

("TTAC"), and the Office of the Ombudsman. Id. After conducting both manual and electronic

searches, only two of these offices located any potentially responsive records. Id. ¶¶ 16-17.

As described above, an agency need only respond to a FOIA request that reasonably

describes the requested records, 5 U.S.C. § 552(a)(3)(A); Dale, 238 F. Supp. 2d at 103, and then,

need only conduct a search that is reasonably expected to uncover responsive records.  <u>Steinberg</u>, 23 F. 3d at 548; <u>Oglesby</u>, 920 F.2d at 68; <u>Weisberg</u>, 745 F.2d at 1485; <u>see</u> discussion <u>supra</u> at pp. 9-10.  TSA has done exactly that.  In its original effort to identify records that might be responsive to plaintiff's FOIA request, TSA contacted plaintiff's counsel and sought clarification or narrowing of the extraordinarily broad FOIA request submitted by plaintiff.  Understanding that plaintiff sought records concerning whether he was on a watch list, TSA responded to that request.  When an administrative appeal was filed and it became clear that plaintiff sought additional records, <u>but</u> <u>see</u> <u>supra</u> at pp. 12-13 (discussing the unreasonableness of plaintiff's broad request on its face), TSA identified those offices most likely to have responsive records and searched each one by both manual and electronic means.  These searches are both reasonable and adequate.  <u>See</u> <u>Defenders of Wildlife v. U.S. Dept. of Interior</u>, 314 F. Supp. 2d 1, 10 (D.D.C. 2004) (Huvelle, J.) ("An adequate search may be limited to the places most likely to contain responsive documents") (citing <u>Schrecker v. United States Dept. of Justice</u>, 217 F. Supp. 2d 29, 34-35 (D.D.C. 2002) (Lamberth, J.), <u>aff'd</u>, 349 F.3d 657 (D.C. Cir. 2003)).  Thus, TSA's effort in response to plaintiff's request was fully compliant with the requirements of FOIA.

### 2.    The Glomar Response.

TSA's refusal to confirm or deny plaintiff's existence on a watch list is a proper response to a request for information of this type.  An agency's decision to neither confirm nor deny the existence of responsive records is commonly known as a <u>Glomar</u> response in reference to the subject of a FOIA request for records pertaining to a ship, the "Hughes Glomar Explorer."  <u>See</u> <u>Phillippi v. Central Intelligence Agency</u>, 546 F.2d 1009 (D.C. Cir.1976).  The invocation of the <u>Glomar</u> response is appropriate when "to confirm or deny the existence of records . . . would cause harm cognizable under a FOIA exemption."  <u>Gardels v. Central Intelligence Agency</u>, 689

F.2d 1100, 1103 (D.C. Cir. 1982).

In this case, TSA's decision to refuse to confirm or deny whether plaintiff's name appears on a watch list is rooted in Exemption 3. Exemption 3 provides that FOIA's disclosure requirements do "not apply to matters that are – . . . specifically exempted from disclosure by statute . . . provided that the statute (A) requires that matters be withheld from the public in such a manner as to leave no discretion on the issue, and (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). In examining an Exemption 3 claim, a court must determine first whether the claimed statute is a statute of exemption under FOIA, and second whether the withheld material satisfies the criteria of the exemption statute. See Central Intelligence Agency v. Sims, 471 U.S. 159, 167 (1985); Fitzgibbon v. Central Intelligence Agency, 911 F.2d 755, 761 (D.C. Cir. 1990). Because the threshold issue for the application of Exemption 3 is based on the statute invoked by the agency, the analysis is distinct from that employed to analyze other FOIA exemptions. As the D.C. Circuit has explained, "'Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.'" Fitzgibbon, 911 F.2d at 761-62 (quoting Assoc. of Retired R.R. Workers, Inc. v. U.S. R.R. Retirement Bd., 830 F.2d 331, 336 (D.C. Cir. 1987) and Goland, 607 F.2d at 350). Under these standards, TSA's use of a Glomar response was proper.

First, TSA is subject to an applicable Exemption 3 statute. TSA is the federal agency responsible for security in all modes of transportation in the United States. By statute, it is authorized, "[n]otwithstanding section 552 of title 5," i.e. FOIA, to "prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security under

authority of the Aviation and Transportation Security Act (Public Law 107-71) or under chapter 449 of this title if [TSA] . . . decides that disclosing the information would – . . . (C) be detrimental to the security of transportation."  49 U.S.C. § 114(s).

Prior to the creation of TSA, similar authority was granted to the Federal Aviation Administration.  See Pub. L. No. 93-366, § 202, 88 Stat. 409, 417 (Aug. 5, 1974) (previously codified at 49 U.S.C. App. § 1357(d)(2)) ("the FAA nondisclosure provision").   As the Court of Appeals conclusively held when examining the FAA nondisclosure provision, its plain language reflects "unmistakably that Congress intended to allow the FAA to withhold from public disclosure information falling within [its terms] whether or not FOIA is invoked."  Public Citizen v. Fed. Aviation Admin., 988 F.2d 186, 195 (D.C. Cir. 1993); see also id. at 194 ("the phrasing clearly and unambiguously provides that [the provision], where applicable and invoked by the FAA, trumps FOIA's disclosure requirements.").

Like the FAA statute at issue in Public Citizen, the "notwithstanding" clause in section 114(s) "unmistakably" reflects that Congress intended to allow TSA to withhold information falling within its scope "whether or not FOIA is invoked."  Public Citizen, 988 F.2d at 195. Section 114(s) both "establishes particular criteria for withholding," i.e., TSA must decide that disclosure would be "detrimental to the security of transportation," and "refers to the particular types of material to be withheld," i.e., "information obtained or developed in carrying out security."  Thus, the statute plainly "qualifies as a withholding statute under Exemption 3." Sims, 471 U.S. at 167.  See Gordon v. Fed. Bureau of Investigation, 390 F. Supp. 2d 897 (N.D. Cal. 2004) (finding "no dispute" that 49 U.S.C. § 114(s) "fall[s] within Exemption 3").

Second, the information at issue here falls within the scope of the applicable Exemption 3 statute.  TSA has specifically determined, by regulation, that Security Directives issued by TSA

- 18 -

constitute Sensitive Security Information ("SSI"), and are not to be disclosed.  See 49 C.F.R.

§ 1520.5 ("(b) . . . the following information, and records containing such information, constitute

SSI . . . (2) Security Directives.  Any Security Directive or order – (i) issued by TSA under 49

C.F.R. 1542.303, 1544.305, or other authority. . . ."); 49 C.F.R. § 1520.15 ("(a) In general.

Except as otherwise provided in this section, and notwithstanding the Freedom of Information

Act (5 U.S.C. 552) or the Privacy Act (5 U.S.C. 552a), and other laws, records containing SSI are

not available for copying or inspection. . .").[4]  The TSA watch lists are incorporated into Security

Directives and Emergency Amendments issued to air carriers, Pavlick Decl. ¶ 21, and, thus,

constitute SSI under the governing regulations.  The withholding of such information is explicitly

authorized by statute, and thus, such information is properly exempt from disclosure under

Exemption 3 of FOIA.

        Finally, as described in the declaration of Ms. Pavlick, TSA does not disclose the names

and identifying information of individuals on TSA watch lists as that information constitutes SSI,

and any other answer would compromise information that is exempt from the disclosure

requirements of the FOIA under 5 U.S.C. § 552(b)(3).  Pavlick Decl. ¶ 20.  If TSA were to

confirm in one case that a particular individual was not on a watch list, but was constrained in

another case merely to refuse to confirm or deny whether a second individual was on a watch list,

the accumulation of these answers over time would tend to reveal SSI.  Pavlick Decl. ¶ 21.  As

the United States District Court for the Northern District of California correctly found, when

upholding an agency decision refusing to confirm or deny whether a plaintiff's name appeared on

---

        [4]  The regulations provide certain limited circumstances in which SSI may be disclosed, subject to various limitations, see 49 C.F.R. § 1520.15(b)-(e), but make clear that "[w]hen TSA discloses SSI pursuant to paragraphs (b) through (e) of this section, TSA makes the disclosure for the sole purpose described in that paragraph.  Such disclosure is not a public release of information under the Freedom of Information Act."  Id. § 1520.15(g).

a watch list:

> The watch lists were developed and are maintained for a law enforcement
> purpose.  Requiring the government to reveal whether a particular person is on the
> watch lists would enable criminal organizations to circumvent the purpose of the
> watch lists by determining in advance which of their members may be questioned.
> . . . . While such a risk is not posed by plaintiffs, if the Court were to require the
> government to reveal such information to plaintiffs, it would have to require the
> government to do the same for all inquiries.

Gordon v. Fed. Bureau of Investigation, 388 F. Supp. 2d 1028, 1037 (N.D. Cal. 2005).  Because

to provide plaintiff either an affirmative or a negative response with respect to his presence on a

TSA watchlist would thus tend to reveal information specifically exempted from disclosure and

thus, "cause harm cognizable under a FOIA exemption," Gardels, 689 F.2d at 1103, TSA

properly declined either to confirm or deny the information.

> 3.      TSA's Request for Additional Information Prior to Releasing Two
> Potentially Responsive Documents.

In the search conducted following plaintiff's administrative appeal, TSA identified two

documents that may be responsive to plaintiff's request, but "lack[ed] specific details to ensure

that [plaintiff] and the individual referenced in [these] records are the same person."  Pavlick

Decl. ¶ Ex. I; see also id. ¶¶ 14, 18.  Because TSA was concerned that "to mistakenly release

these documents may constitute a direct violation of the Privacy Act, 5 U.S.C. § 552a(b)," id.,

TSA requested that plaintiff provide additional information so that it could be determined

whether the records it located were, in fact, records "that refer to . . . Mr. Tooley," as opposed to

some other individual.  Pavlick Decl. Ex. I; see also id. ¶¶ 14, 18.

The Privacy Act provides that "[n]o agency shall disclose any record which is contained

in a system of records . . . except pursuant to a written request by, or the prior written consent of,

the individual to whom the record pertains. . . ," 5 U.S.C. § 552a(b), except in certain

circumstances, including when "required under section 552 of this title," i.e., by FOIA.  Id.

- 20 -

§ 552a(b)(2). TSA is currently awaiting plaintiff's response to its request for additional

information so that it may determine whether the records located are in fact responsive to

plaintiff's request and, if it is determined to be so, TSA will release all reasonably segregable

non-exempt portions of such records in an expeditious manner. Pavlick Decl. ¶ 35; see also id.

¶ 13. Nothing about this response suggests that TSA has improperly withheld agency records so

as to require judicial relief under FOIA.

Thus, because TSA's response to plaintiff's FOIA request was fully in compliance with

FOIA, TSA Administrator Hawley is entitled to summary judgment on plaintiff's claims.

## II. THE COURT LACKS JURISDICTION OVER ANY REQUESTS FOR INJUNCTIVE RELIEF MADE AGAINST THE OFFICIAL CAPACITY DEFENDANTS.

Plaintiff's Complaint consists of four counts for relief against six different defendants.

Three counts seek relief against six defendants named in their individual capacities in the form of

damages for alleged constitutional violations. See Compl., Counts I-III, ¶¶ 49-76. As noted

above, see note 1, supra, this motion does not address any individual capacity claim in plaintiff's

Complaint. The fourth count, addressed in detail above, seeks relief against the three official

capacity defendants for their alleged violations of FOIA.

Separate and apart from plaintiff's delineation of counts, the concluding paragraphs of

plaintiff's Complaint

> demand[] (1) That this Court order that Defendants immediately cease and desist
> all wiretapping and surveillance activities against Plaintiff. (2) That this Court
> order Defendants to remove Plaintiff's name from any and all watch lists that may
> indicate Plaintiff is associated with any terrorist activities or organizations. [and]
> (3) That this Court immediately and permanently enjoin Defendants from
> engaging in any further illegal wiretapping and surveillance activities against
> Plaintiff.

See Compl. at 15 (hereinafter "the Wherefore paragraph").

- 21 -

These demands for injunctive relief contained in the Wherefore paragraph are not tied to any particular count of plaintiff's Complaint, and do not identify which defendant is the target of plaintiff's claim for such relief. The most reasonable reading of plaintiff's Complaint, accordingly, is that the official capacity defendants are sued only for relief in conjunction with their responses to plaintiff's FOIA claims – claims upon which, as fully described above, the three official capacity defendants are entitled to summary judgment.[5]

Even if the Complaint could be read to seek injunctive relief to operate against the three official capacity defendants, however, the Court would lack jurisdiction to enter the relief sought and dismissal is required under Federal Rule of Civil Procedure 12(b)(1).[6]

The jurisdiction of the federal court is governed by Article III of the U.S. Constitution, which "confines the federal courts to adjudicating actual 'cases' and 'controversies.'" Allen v. Wright, 468 U.S. 737, 750 (1984). This is a "bedrock requirement." Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 471 (1982).

---

[5] To the extent plaintiff's Complaint might be construed as stating claims for injunctive relief against the official capacity defendants, the Complaint fails to meet the notice pleading requirements of Rule 8, which requires a "short and plain statement of the claim" that is sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002) (internal quotation marks omitted)). As described above, the official capacity defendants cannot be deemed to have fair notice of the claims made against them in light of the ambiguities in plaintiff's pleading. It is within the Court's discretion to dismiss plaintiff's Complaint for failure to comply with Rule 8. See Ciralsky v. Central Intelligence Agency, 355 F.3d 661, 669 (D.C. Cir. 2004); see also Fed. R. Civ. P. 41(b) ("For failure of plaintiff . . . to comply with these rules. . ., a defendant may move for dismissal of an action or of any claim against the defendant") (emphasis added).

[6] Plaintiff's Complaint is replete with allegations purportedly relating to activities of the National Security Agency ("NSA") which recently have been the subject of media scrutiny. See, e.g., Compl. ¶¶ 38-48. Neither the NSA nor any official capacity employee of the NSA is a defendant in this lawsuit. These allegations, accordingly, are completely irrelevant to plaintiff's requests for relief against the three official capacity defendants, Attorney General Gonzalez, DHS Secretary Chertoff, and TSA Administrator Hawley, who are the only movants herein.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976); see also Federal Express Corp. v. Airline Pilots Ass'n, 67 F.3d 961, 963 (D.C. Cir. 1995) ("The federal courts are powerless to decide any matter unless it involves a case or controversy").

It is the plaintiff's responsibility, as the party seeking to invoke the Court's jurisdiction, to "allege in [his] pleadings the facts essential to show jurisdiction." Flowers v. Exec. Ofc. of the President, 142 F. Supp. 2d 38, 45 (D.D.C. 2001) (Kennedy, J.) (citing, inter alia, McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 179 (1936)). The Court may not infer jurisdiction "argumentatively from averments in [the] pleadings," id. (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 547 (1986)); instead, "jurisdiction must 'affirmatively and distinctly' appear in the complaint." Id. (citing Norton v. Lawney, 266 U.S. 511 (1925)).

This Court is without jurisdiction to entertain plaintiff's claims for injunctive relief because plaintiff fails to meet his burden of establishing his standing to seek such relief "affirmatively and distinctly." Flowers, 142 F. Supp. 2d at 45. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must show (1) that he has suffered an "injury in fact"; (2) that there is a causal connection between the injury complained of, such that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Id. at 560-61. These requirements must be met with respect to each aspect of relief sought by a plaintiff. Friends of the Earth, Inc. v. Laidlaw, 528 U.S. 167, 185 (2000). In particular, a plaintiff

requesting declaratory relief or injunctive relief aimed at preventing future acts must demonstrate that harm resulting from such future acts is "actual or imminent, not conjectural or hypothetical . . . . Past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present effects." City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); see also Fraternal Order of Police v. Rubin, 134 F. Supp. 2d 39, 41 (D.D.C. 2001) (Kennedy, J.); Vanover v. Hantman, 77 F. Supp. 2d 91, 100 (D.D.C. 1999), aff'd, 38 Fed. Appx. 4, 2002 WL 1359630 (D.C. Cir. 2002). In all cases, the standing inquiry must be "especially rigorous when reaching the merits of a dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." Raynes v. Bird, 521 U.S. 811, 819-20 (1997).

When considering a motion to dismiss for lack of standing, as with all motions to dismiss, the allegations of the complaint must be construed in favor of the pleader. See Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other grounds, 483 U.S. 64 (1987). The Court need not, however, accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions. See Nat'l Treas. Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Rather, it is axiomatic that "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." Flowers, 142 F. Supp. 2d at 46 (quoting Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981), aff'd on other grounds, 460 U.S. 325 (1983)). Nor are allegations upon "information and belief" sufficient to survive a motion to dismiss unless accompanied by "an allegation that the necessary information lies within defendant's control, and . . . also . . . by a statement of the facts upon which the allegations are based." Flowers, 142 F. Supp. at 47 (citing

- 24 -

Kowal, 16 F.3d at 1279 n.3) (emphasis in original).

When evaluating a motion to dismiss, a court must assess a plaintiff's allegations for their "logical adequacy," and for "quantum of proof," i.e., whether the specific alleged facts support inferences claimed by plaintiff, including an inference of causation. Judicial Watch, Inc. v. U.S. Senate, 432 F.3d 359 (D.C. Cir. 2005) (citing, inter alia, Haase v. Sessions, 835 F.2d 902, 908 (D.C. Cir. 1987)). Thus, "even under liberal pleading standards, 'sweeping and unwarranted averments of fact' without any factual basis will not be deemed admitted for purposes of a motion to dismiss." Flowers, 142 F. Supp. 2d at 46 (quoting Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987)). Under these well-established standards, dismissal of plaintiff's injunctive relief claims for lack of jurisdiction is warranted.[7]

In his effort to meet his burden to establish jurisdiction, plaintiff alleges that an "actual controversy" exists between the parties as to whether:

a.    Defendants have unlawfully wiretapped Plaintiff's home;

b.    Defendants have conducted unlawful surveillance of Plaintiff in violation of the First and Fourth Amendment [a and b are collectively referred to herein as the "wiretapping claims"];

c.    Defendants have improperly placed Plaintiff on a terrorist watch list [the "watch

---

[7] Contrary to plaintiff's claims, see Compl. ¶ 15, 28 U.S.C. § 1343 does not provide the jurisdictional basis for this lawsuit. The provision cited by plaintiff provides a federal court with jurisdiction to "redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States. . . ." 28 U.S.C. § 1343(a)(3) (emphasis added). As courts have long recognized, 28 U.S.C. § 1343 is the "jurisdictional counterpart" to claims under 42 U.S.C. § 1983, which provides a cause of action against "every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution. . . ." (emphasis added). See Lynch v. Household Finance Corp., 405 U.S. 538, 540 (1972). Plaintiff's suit, however, is against federal officials, who do not act "under color of any State law," which is the prerequisite to jurisdiction under 28 U.S.C. § 1343. That statute has no bearing here.

list claim"]; [and]

d.      Defendants unlawfully placed a Radio Frequency Identification Tag ("RFIT") on
Plaintiff's vehicle [the "radio tag claim"].

Compl. ¶ 2. Despite his identification of these purported controversies, however, the actual facts

plaintiff alleges in support of these claims are insufficient to establish his standing to raise any of

them. Instead, plaintiff's claims are grounded in speculation, innuendo, and conjecture, none of

which provides a basis for this Court's jurisdiction.

As described in detail below, once stripped of conjecture, subjective beliefs, and

unwarranted inferences which this Court may not credit, plaintiff's substantive factual allegations

boil down to three: (1) that on an unspecified date in Spring 2002, plaintiff had a conversation

with a Southwest Airlines representative about airline security measures, Compl. ¶¶ 18-20; (2)

that at some point after that conversation "and not until almost a year later," plaintiff began to

notice "problematic phone connections, including . . . intermittent clicking noises," Compl. ¶ 21;

and (3) that, in response to a FOIA request made by plaintiff's counsel in October 2005, TSA

refused to confirm or deny whether plaintiff was on a watch list. Compl. ¶ 32. These bare

allegations, unadorned by the speculation and conjecture with which plaintiff seeks to embroider

them, do not establish plaintiff's standing to challenge any action of the official capacity

defendants (with the exception, of course, of TSA's Glomar response to plaintiff's FOIA request,

which is fully discussed above).

    A.      The Wiretapping Claims.

Plaintiff seeks injunctive relief that "order[s] that Defendants immediately cease and

desist all wiretapping and surveillance activities against Plaintiff" and "immediately and

permanently enjoin[s] Defendants from engaging in any further illegal wiretapping and

surveillance activities against Plaintiff." Compl. at 15 (Wherefore paragraph). Plaintiff's

wiretapping claim purports to be grounded in the First, Fourth and Fifth Amendments.  Plaintiff concludes that unspecified defendants have violated his Fourth and Fifth Amendment rights because "roving wiretaps were placed on his residential landline phone; his landline phone at his former Virginia Beach residence; his cellular phone; his wife's cellular phone; his father's phone; his brother's phone; his sister's phone; his in-laws' phone; and his family's home phone in Lincoln, Nebraska."  Compl. ¶¶ 22, 52, 61.[8]  Plaintiff also contends that the "roving wiretaps were placed" in retaliation for "his innocent comments to [a] Southwest Airlines representative," in violation of his First Amendment rights.  Id. ¶¶ 25, 70-71; see Compl. ¶¶ 18-20.

Plaintiff's Complaint does not allege which federal agency or official is purported to have placed these "roving wiretaps," or indeed, that any federal agency or official, in fact, placed the "roving wiretaps."  Instead, plaintiff pleads, in passive voice, that taps "were placed," Compl. ¶ 22, and that plaintiff "believes" that "he is being illegally monitored by the Defendants."  Id. ¶ 25.  Plaintiff's subjective belief in this regard is supported only by the bare fact that "at some point after" his conversation with a Southwest Airlines representative, "and not until almost an entire year later, in the fall of 2003 – Mr. Tooley began to notice problematic phone connections, including" what plaintiff characterizes as "telltale intermittent clicking noises, which still continue to this day."  Compl. ¶ 21.  From the bare fact of these "intermittent clicking noises," plaintiff infers that he has been injured because he has been subjected to illegal electronic surveillance by the official capacity federal defendants.

For the Court to credit that inference would require it to accept plaintiff's several layers

---

[8]  Plaintiff cannot, of course, assert constitutional claims on behalf of any person other than himself.  See generally Warth v. Seldin,  422 U.S. 490, 499 (1975) (a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

of speculation.  First, the Court would have to accept plaintiff's assumption, drawn from the mere fact of clicking on the phone line, that the plaintiff's problematic phone connections are indicative of some form of wiretapping, as opposed to a reflection of plaintiff's phone, his phone lines, or his imagination.  See In re Grand Jury Proceedings, 525 F. Supp. 831 (D.S.C. 1981) (claim by potential grand jury witnesses that "they believed their phones were tapped, because they heard 'strange noises and clicking sounds' on the lines, were lacking in both specificity and credibility. . . .  Standing alone, such assertions amount to nothing more than general conclusory allegations raising not even a reasonable suspicion that their phones were actually tapped").  Second, the Court would have to assume that, if the clicking is a reflection of wiretapping, that such wiretapping was put in place by an agent of the federal government, an assertion as to which plaintiff offers only his subjective belief unsupported by any factual allegation whatsoever.  Third, the Court would have to assume, as plaintiff apparently does – although it is nowhere alleged – that plaintiff's conversation with the Southwest Airlines representative was somehow made known to the federal government.  And, finally, the Court would have to assume that agents of the federal government put a wiretap in place in retaliation for statements made in that conversation.  No actual fact alleged in plaintiff's Complaint – as opposed to his speculation and conjecture  – supports that string of assumptions.

Under the familiar rubric of standing, it is clear that the speculation and conjecture that comprises the bulk of plaintiff's Complaint do not satisfy his burden of demonstrating that he has suffered an injury-in-fact relating to his wiretapping claims.  "[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putative and illegal conduct of the defendant."  Valley Forge Christian Coll. v. Americans United for Separation of Church & State,

Inc., 454 U.S. 464, 472 (1982).  The injury or threat must be "distinct and palpable," Warth v. Seldin, 422 U.S. 490, 501 (1975), "concrete," Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 221 (1974), "direct," O'Shea v. Littleton, 414 U.S. 488, 494 (1974), and "both 'real and immediate,' not 'conjectural' or 'hypothetical.'" Id. (citation omitted).

As the Court of Appeals discussed at length in United Presbyterian Church in the U.S.A. v. Reagan, 738 F.2d 1375 (D.C. Cir. 1985), the harms necessary to sustain a claim to standing arising from allegedly unlawful government surveillance can take a variety of forms.  See id. at 1378-81 (discussing three forms of harm: a "chilling effect" produced by a fear of being subjected to illegal surveillance, id. at 1378-80; the immediate threat of concrete, harmful action, such as a threatened arrest, id. at 1380; and the allegation that a plaintiff "[has] been or [is] currently subjected to unlawful surveillance," id. at 1380-81).  Plaintiff here alleges only the third of these forms of harm discussed in United Presbyterian; he makes no allegation that any of his activities are chilled or that he is subject to any immediate threat of official action such as an arrest.  His only allegation is that he "believes that . . . he is being illegally monitored by Defendants."[9]

This assertion fails for the same reason that this alleged form of harm failed to provide standing to the plaintiffs in United Presbyterian: "the allegations on that score are in any event too generalized and nonspecific to support a complaint."  738 F.2d at 1380.  The United Presbyterian court specifically recounted the allegations that it considered "too generalized and

---

[9]  The Court of Appeals has long established as a matter of law, that even were the Court to credit plaintiff's allegation that he is on a watch list – which as described in the discussion, infra, of plaintiff's watch list claim, it should not – "the presence of one's name on a watch list cannot be presumed to establish that interception of one's communications has occurred."  See Halkin v. Helms, 690 F.2d 977, 998 (D.C. Cir. 1982) (finding the decision in Halkin v. Helms, 598 F.2d 1 (D.C. Cir. 1978), "controlling on the point").

nonspecific to support a complaint," including the allegation that "[plaintiff] has reason to believe that, for a long time, its officers, employees, and persons associated with it have been subjected to government surveillance, infiltration and disruption," and the allegation that "[plaintiff] discerns a long-term pattern of surveillance of its members . . . ." Id. at 1380 n.2.

Particularly given the assumption upon assumption that would have to be credited in order to even get to the basis for plaintiff's "belief" that he is harmed, plaintiff's allegations here provide even less specificity than the allegations considered wholly insufficient by the Court of Appeals in United Presbyterian. See 738 F.2d at 1380 n.2; see also Breeden v. Univ. of Miss. Medical Ctr., 241 F. Supp. 2d 668, 675 (S.D. Miss. 2001) ("A plaintiff must allege more than just a personal belief that she is the victim of retaliation. . . . Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim.") (citing Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir.1995)); Consejo Puertorriqueno Por La Paz v. Director, Fed. Bureau of Investigation, 458 F. Supp. 1041, 1042 (D.D.C. 1978) ("Mere surveillance, . . . without more, cannot establish the specific injury or threat of injury mandated by [prior decisional law]") (citing Laird v. Tatum, 408 U.S. 1, 14 (1972)). Plaintiff's conclusory allegations are simply insufficient to establish the injury-in-fact required to establish standing.

Plaintiff's failure to allege an adequate injury-in-fact is compounded by his failure to adequately allege facts sufficient to meet the causation and redressability prongs of the standing inquiry. Standing depends upon a demonstration that there is a causal connection between the injury complained of, such that the injury is fairly traceable to the challenged action of the defendant; and upon a demonstration that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Lujan, 504 U.S. at 560-61. Furthermore, in

order to show an entitlement to prospective injunctive relief barring future acts such as plaintiff requests here, a plaintiff must demonstrate that harm resulting from such future acts is "<u>actual</u> or <u>imminent</u>, not conjectural or hypothetical." <u>Lyons</u>, 461 U.S. at 102 (emphases added).

Plaintiff's factual allegations do not establish that any injury he complains of is <u>caused</u> by the official capacity defendants; as described above, even assuming that clicking on plaintiff's phone is indicative of a wiretap, plaintiff does not allege that such a wiretap was placed by an agent of the federal government; nor does plaintiff allege that any of the three official capacity defendants or their employees or agents placed the wiretaps. Moreover, plaintiff does not identify why injunctive relief against the three official capacity defendants will <u>redress</u> any injury of which he complains; absent any allegation that the Attorney General, the Secretary of DHS, or the TSA Administrator is responsible for the alleged wiretaps, plaintiff does not establish that injunctive relief entered against these defendants would be likely to accomplish anything at all. Finally, plaintiff certainly does not establish on the basis of his nonspecific and conclusory allegations that he is faced with any "actual or imminent harm" arising from the actions of these three defendants that is sufficient to warrant the entry of the prospective injunctive relief he seeks. Plaintiff's failure to demonstrate the three requirements of Article III standing, accordingly, requires dismissal of plaintiff's wiretapping claims for lack of jurisdiction.

### B.    The Watch List Claim.

Plaintiff's request for injunctive relief relating to his watch list claim seeks an order that requires "Defendants to remove Plaintiff's name from any and all watch lists that may indicate Plaintiff is associated with any terrorist activities or organizations." Compl. at 15 (Wherefore paragraph). Yet, other than his subjective belief, plaintiff make no allegation that demonstrates his standing to seek such relief. Plaintiff alleges only that he "believes that . . . he has been

- 31 -

placed on one or more terrorist watch lists." Compl. ¶ 25. No factual allegation supports that subjective belief. Indeed, plaintiff makes only two factual allegations that even arguably support his supposition that he has been placed on a watch list, and neither of these provides the Court with any basis to credit plaintiff's claims.

First, plaintiff alleges that, on December 8, 2005, TSA refused to confirm or deny that plaintiff was on a watch list in response to plaintiff's FOIA request. See Compl. ¶ 48(a) (discussing plaintiff's "inclusion on one or more terrorist watch lists, as evidenced by Defendant Transportation Security Administration's tacit admission in its December 8, 2005 letter to counsel") (emphasis added). Thus, from TSA's standard Glomar response to plaintiff's FOIA request, see supra at pp. 16-20, plaintiff makes the assumption that TSA has made "a tacit admission that Mr. Tooley is on at least one watch list." Compl. ¶ 34. This is, of course, exactly the sort of unwarranted inference that a Glomar response is intended to prevent. See Intercommunity Relations Council of Rockland Cty., Inc., v. U.S. Dept. of Health & Human Servs., 859 F. Supp. 81, 83-84 (S.D.N.Y. 1994) ("FOIA is not primarily a tool for use in other litigation, nor does a shortfall in FOIA responses necessarily lead to an adverse inference in that context."). Moreover, this inference is a conclusory assumption, and neither a "tacit admission" nor an allegation of fact. Such an allegation will not suffice to withstand this motion to dismiss. See Kowal, 16 F.3d at 1276; Briscoe, 663 F.2d 723; Flowers, 142 F. Supp. 2d 46-47 (all quoted supra, at p. 24).

Second, in an attempt to support his watch list claim, plaintiff makes the allegation that "when Mr. Tooley travels by airplane, he is improperly detained and subjected to strict search without any probable cause." Compl. ¶ 24. The wholly conclusory nature of this allegation is immediately apparent. It simply cannot be discerned from this description whether plaintiff is

complaining that he is subject to some airline security procedure that is anything other than the ordinary.  Such security restrictions, of course, do not raise any constitutional concerns at all. See, e.g., 49 U.S.C. § 44902(c) ("An agreement to carry passengers or property in air transportation is deemed to include an agreement that the passenger or property will not be carried if consent to search for [certain] purposes . . . is not given."); United States v. Edwards, 498 F.2d 496 (2d Cir. 1974) ("The search of carry-on baggage, applied to everyone, involves not the slightest stigma. . . .  More than a million Americans subject themselves to it daily; all but a handful do this cheerfully, even eagerly, knowing it is essential for their protection."); United States v. Davis, 482 F.2d 893, 913 (9th Cir. 1973) ("a screening of passengers and of the articles that will be accessible to them in flight does not exceed constitutional limitations" if it (1) is "no more extensive nor intensive than necessary, in the light of current technology, to detect the presence of weapons or explosives"; (2) is "confined in good faith to that purpose"; and (3) may be avoided by "potential passengers" who elect "not to fly."); Miller v. Reed, 176 F.3d 1202, 1205 (9th Cir. 1999) ("burdens on a single mode of transportation do not implicate" a constitutional right).  Plaintiff's bare allegation that he is "detained and subjected to strict search," without any further supporting allegation, does not give rise to the inference that he is on a watch list and, thus, provides no basis for a finding that he has standing to raise his watch list claim.[10]  The Court, thus, lacks jurisdiction over this claim.[11]

---

[10]  Plaintiff's request for injunctive relief seeking removal from a watch list is rendered further specious by the fact that – as plaintiff was twice advised – TSA has developed a procedure to expedite watch list clearance procedures for passengers who experience delays in air travel.  See Pavlick Decl. ¶¶ 10-11; see also TSA Watch List Clearance Procedures, available at http://www.tsa.gov.  Given the availability of these administrative procedures, which are described on TSA's public internet site, plaintiff's request for judicial relief is manifestly improper.  See Younger v. Harris, 401 U.S. 37, 43 (1971) (it is a "basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief"); see also

C.       The Radio Tag Claim

Plaintiff alleges that "upon information and belief, both Mr. Tooley's vehicle and his wife's vehicle have been illegally subjected to permanent Radio Frequency Identification Tags . . . that monitor their vehicle movements."  Compl. ¶ 23; but see note 8, supra.  Plaintiff makes no other allegation in support of this claim.  As with his other claims, this lone allegation fails to demonstrate a concrete injury sufficient to support standing.  First, as noted above, plaintiff's claim "upon information and belief," that his vehicle has been subjected to a radio tag is insufficient to establish such a thing as a matter of fact.  Factual allegations made upon information and belief will survive a motion to dismiss only if accompanied by "an allegation that the necessary information lies within defendant's control, and . . . a statement of the facts upon which the allegations are based."  Flowers, 142 F. Supp. at 47 (citing Kowal, 16 F.3d at 1279 n.3) (emphasis in original).  Plaintiff's "information and belief" allegations are

---

Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-312 (1982) ("It goes without saying that an injunction is an equitable remedy. . . . The grant of jurisdiction . . .  hardly suggests an absolute duty to [act] under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law").

[11]   The Court lacks jurisdiction over plaintiff's watch list claim for an additional – and significant – reason.  Because plaintiff's only allegations relating to his purported inclusion on a watch list relate to TSA, defendants assume that plaintiff is referring to the No-Fly and Selectee Lists maintained by TSA.  The No-Fly and Selectee Lists identify individuals who "may be a threat to civil aviation or national security" or those who "are known to pose, or are suspected of posing, a risk of air piracy or terrorism or a threat to airline passenger safety. . . ."  49 U.S.C. §§ 114(h)(3), (h)(2).  The No-Fly and Selectee Lists are Security Directives issued by TSA pursuant to 49 U.S.C. § 114(l)(2)(A), which authorizes TSA to issue regulations and security directives intended "to protect transportation security."  See Gilmore v. Gonzales, 435 F.3d 1125, 1131 n.4 (9th Cir. 2006).  Congress has vested exclusive jurisdiction to review security orders in the Courts of Appeals.  49 U.S.C. § 46110(a) & (c).  Thus, only the Court of Appeals may "affirm, amend, modify, or set aside" any part of an order issued under the authority of 49 U.S.C. § 114(l).  See Gilmore, 435 F.3d at 1133; Green v. Transp. Security Admin., 351 F. Supp. 2d 1119, 1125 (W.D. Wash. 2005).  This Court, accordingly, lacks jurisdiction to enjoin any of the three official capacity defendants to "remove Plaintiff's name" from these watch lists, as this would constitute an amendment or modification of a TSA security order.

accompanied by neither.  The bare and conclusory statement contained in paragraph 23 of plaintiff's Complaint, accordingly, is insufficient to establish the concrete injury-in-fact necessary to support plaintiff's standing to seek injunctive relief related to his radio tag claim.

Moreover, as with his wiretapping claims, plaintiff's radio tag allegation is phrased in the passive voice; plaintiff does not actually allege that any of the three official capacity defendants who are movants here were responsible for "subject[ing]" his vehicle to the radio tag.  Instead, he alleges only that his vehicles were so "subjected," without specifying by whom.  Accepting plaintiff's claim that this passive allegation establishes standing to seek injunctive relief against any or all of the three official capacity defendants would require the Court to assume – based only on plaintiff's subjective speculation – that one of the agencies these defendants control was responsible for this alleged activity.  Plaintiff offers no fact in support of this assumption, which is critical to establishing the causation element intrinsic to Article III standing analysis.  Similarly, plaintiff fails to provide any factual allegation demonstrating that an injunction against the three official capacity defendants would redress any injury caused by this alleged tag.  Finally, as before, plaintiff certainly does not establish on the basis of his nonspecific and conclusory allegations that he is faced with any "actual or imminent harm" arising from any alleged actions of these three defendants, see Lyons, 461 U.S. at 102, that is sufficient to warrant the entry of the prospective injunctive relief he seeks.

In all, plaintiff's allegations are conclusory, speculative, and unsupported by any specific facts, and do not support his claim to standing.  Because plaintiff has failed to establish that jurisdiction "affirmatively and directly" appears on the face of his Complaint, see Flowers, 142 F. Supp. 2d at 45, dismissal of any injunctive relief claims that might be stated against the three official capacity defendants is required.

## CONCLUSION

For the reasons stated herein, Attorney General Gonzales, Secretary Chertoff and

Administrator Hawley are entitled to summary judgment on plaintiff's FOIA claims.  Moreover,

to the extent the Complaint may be read as attempting to state claims for injunctive relief against

these defendants in their official capacities, plaintiff's claims must be dismissed for lack of

jurisdiction.

<div style="margin-left:40%">

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

KENNETH J. WAINSTEIN
United States Attorney

JOSEPH H. HUNT
Director, Federal Programs Branch

ELIZABETH J. SHAPIRO
Assistant Director, Federal Programs Branch


_____/s/ Rupa Bhattacharyya_____
RUPA BHATTACHARYYA (VA# 38877)
Senior Trial Counsel
Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C.  20044
Tel: (202) 514-3146; Fax: (202) 318-7593
Email: rupa.bhattacharyya@usdoj.gov

</div>

Dated:   May 1, 2006.