IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SCOTT TOOLEY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 06-00306 (CKK) |
| ) | |
| v. ) | |
| ) | |
| PRESIDENT GEORGE BUSH, et al. ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

As required by Local Rule 7.1(h), and in support of the Motion for Summary Judgment filed on behalf Attorney General Alberto Gonzales, Secretary of the Department of Homeland Security ("DHS") Michael Chertoff, and Administrator of the Transportation Security Administration ("TSA") Edmund Hawley, in their official capacities, those defendants hereby make the following statement of material facts as to which there is no genuine issue.

1. By letter dated October 3, 2005, plaintiff, through his counsel submitted a FOIA request to the Department of Justice ("DOJ"), the Department of Homeland Security ("DHS"), and the Transportation Security Administration ("TSA"). Compl. ¶¶ 26-27; Declaration of David M. Hardy ("Hardy Decl."), attached as Ex. A to Mot. of the Official Capacity Defendants to Dismiss or for Summary Judgment ("Dfts' SJM"), ¶ 5 & Ex. A; Declaration of Anthony J. Kendrick ("Kendrick Decl."), attached as Ex. D to Dfts' SJM, ¶ 6 & Attachment 1; Declaration of Catrina M. Pavlick ("Pavlick Deck."), attached as Ex. E to Dfts' DJM, ¶ 4 & Ex. A.

2. The FOIA requests submitted by plaintiff to DOJ, DHS, and TSA sought "all filings, correspondence, memoranda, documents, reports, records, statements, audits, lists of

names, applications, diskettes, letters, expense logs and receipts, calendar or diary logs, facsimile logs, telephone records, call sheets, tape records [sic], video recordings, notes, examinations, and/or referenced opinions, folders, files, books, manuals, pamphlets, forms, drawings, charts, photographs, electronic mail, and any other documents or things that refer to . . . Scott Tooley." Hardy Decl. Ex A (FOIA request to DOJ); Kendrick Decl. Attachment 1 (FOIA request to DHS); Pavlick Decl. Ex. A (FOIA request to TSA).

3. Plaintiff's FOIA Requests also also sought expedited processing pursuant to 5 U.S.C. §552(a)(6)(E)(ii)(I), and a public interest fee waiver, pursuant to 5 U.S.C. §552(a)(A)(iii). Hardy Decl. Ex A (FOIA request to DOJ); Kendrick Decl. Attachment 1 (FOIA request to DHS); Pavlick Decl. Ex. A (FOIA request to TSA).

**Plaintiff's FOIA Request to DOJ**

4. Plaintiff's October 3, 2005 FOIA request to DOJ was addressed to the FOIA/PA Referral Unit of the Justice Management Division ("JMD"), see Hardy Decl. Ex. A, which is responsible for routing FOIA requests to "the component(s) it believes most likely to have the records that [the requester] wants." 28 C.F.R. § 16.3(a).

5. JMD routed plaintiff's FOIA request to three components: the Federal Bureau of Investigation ("FBI"); the Executive Office of United States Attorneys ("EOUSA"); and DOJ's Criminal Division. Hardy Decl. Ex. A (JMD Routing Slip).

<u>The FBI</u>

6. The FBI received plaintiff's FOIA request from JMD on October 25, 2005. Hardy Decl. ¶ 5.

7. In response to plaintiff's request, the FBI searched for potential records. Hardy Decl. ¶ 19.

8.      In particular, the FBI used the Automated Case Support ("ACS") Universal Index to search its Central Records System ("CRS"). Hardy Decl. ¶ 19.

9.      The CRS enables the FBI to maintain all which information which it has acquired in the course of fulfilling its law enforcement responsibilities. Hardy Decl. ¶ 8. The records maintained in the CRS consist of administration, applicant, criminal, personnel, and other files compiled for law enforcement purposes, arranged by subject matter. Id.

10.     Access to the CRS is obtained through the General Indices, which are arranged in alphabetical order. Hardy Decl. ¶ 9. The General Indices are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual. Hardy Decl. ¶ 14.

11.     The entries in the General Indices fall into two categories: (a) a "main" entry which carries the name corresponding with a subject of a file contained in the CRS; and (b) a "reference" entry, or a "cross-reference," which is a mention or reference to an individual, organization, etc., contained in a documents located in another "main" entry. Hardy Decl. ¶ 10.

12.     The General Indices can be searched either manually or through the Automated Case Support system ("ACS"). Id. ¶¶ 9, 10, 12.

13.     The ACS was implemented in 1995 and consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases. Hardy Decl. ¶ 12. One of these applications is a complete subject/case index to all investigative and administrative cases (Universal Index), id. ¶ 12(c).

14.     The ACS Universal Index contains 93.3 million records and functions to index names to cases and to search names and cases for use in FBI investigations. Hardy Decl. ¶ 12(c).

15. In searching for records responsive to plaintiff's FOIA request, the FBI conducted a search of CRS General Indices using the ACS Universal Index. Hardy Decl. ¶ 19. The FBI searched for plaintiff's name, Scott Thomas Franklin Tooley, using the following key terms "Tooley, Scott, Thomas Franklin," "Tooley, Scott, Thomas F," "Tooley, Scott, Thomas," Tooley, Scott, T, Franklin," "Tooley, Scott, T, F," "Tooley, Scott, T," "Tooley, Scott," "Tooley, S, Thomas Franklin," "Tooley, S, Thomas F," "Tooley, S, Thomas," "Tooley, S, T, Franklin," "Tooley, S, T F," "Tooley, S, T," "Tooley, Thomas," and "Tooley, Franklin." Id. The FBI also used plaintiff's date of birth and Social Security number to facilitate the identification of responsive records. Id.

16. This search failed to locate any main investigatory files responsive to plaintiff's request at FBI Headquarters. Hardy Decl. ¶ 19.

17. By letter dated October 28, 2005, the FBI advised plaintiff that a search of the automated indices to the Central Records System at FBI Headquarters located no responsive documents. Hardy Decl. ¶ 6.

18. In its October 28, 2005 response, FBI also advised plaintiff that he could appeal the FBI's "no records" response by writing to the DOJ Office of Information and Privacy within sixty (60) days. Hardy Decl. ¶ 6 & Ex. B.

19. Upon receipt of the Complaint in this litigation, the FBI decided to conduct a second search. Specifically, the FBI conducted a search of the CRS for cross-references. Hardy Decl. ¶ 20.

20. This second search also failed to identify any pertinent main files or cross-references at FBI Headquarters. Hardy Decl. ¶ 20.

21. The FBI also searched its Electronic Surveillance ("ELSUR") indices. Hardy

Decl. ¶ 20.

22. The ELSUR indices are a separate system of records from the CRS and contain information on individuals who are or were (1) targets of direct surveillance; (2) participants in monitored conversations; and (3) owners, leasers, or licensors of premises where the FBI conducted electronic surveillance. Hardy Decl. ¶ 16

23. The FBI's search of the ELSUR indices failed to locate any records responsive to plaintiff's request. Hardy Decl. ¶ 20.

24. On March 15, 2006, DOJ advised the FBI that its office has no record of having received an administrative appeal from plaintiff with regard to the FBI's October 28, 2005, no records response to plaintiff's FOIA request. Hardy Decl. ¶ 7.

## EOUSA

25. EOUSA received plaintiff's FOIA request from JMD on October 26, 2005. Declaration of Anthony J. Ciccone ("Ciccone Decl."), attached as Ex. B to Dfts' SJM, ¶ 4 & Ex. 1.

26. By letter dated November 8, 2005, EOUSA responded to plaintiff with a request for clarification under DOJ regulation, 28 C.F.R. § 16.3(b), which states that "[i]f a component determines that your request does not reasonably describe records, it shall tell you . . . so that you may modify it to meet the requirements of this section." Ciccone Decl. ¶ 10 & Ex. 3.

27. The November 8, 2005, deficiency notice advised plaintiff that a reasonable search could not be undertaken for "all . . . records . . . that refer to . . . Scott Tooley" without some clarification as to which offices plaintiff wanted to conduct such a search. Ciccone Decl. ¶ 11 & Ex. 3.

28. More specifically, EOUSA's November 8, 2005, letter advised plaintiff that

"[s]ince the files . . . of United States Attorneys are located in more than 100 separate offices throughout the country, we ask that you identify the specific U.S. Attorney's office(s) where you believe the requested records exist.  This would primarily be the district(s) in which <u>prosecution or litigation</u> occurred. . . .  Once you have corrected the above deficiencies, please submit a new request for the documents." Ciccone Decl. ¶ 12 & Ex. 3 (emphasis in original).

29.     The November 8, 2005, letter further advised the plaintiff that he could appeal EOUSA's determination in writing within sixty (60) days by writing to DOJ's Office of Information and Privacy.  Ciccone Decl. Ex. 3.

30.     EOUSA received neither a response to the deficiency notice nor a superseding request from plaintiff.  Ciccone Decl. ¶ 13.

31.     EOUSA has no record that plaintiff lodged an administrative appeal with DOJ's Office of Information and Privacy within 60 days of the November 8, 2005, deficiency notice. Ciccone Decl. ¶ 14.

<u>DOJ's Criminal Division</u>

32.     On October 25, 2006, JMD referred plaintiff's FOIA request to the Criminal Division.  Declaration of Kathy Hsu ("Hsu Decl."), attached as Ex. C to Dfts' MSJ, ¶ 4 n.1.

33.     By letter dated November 22, 2005, the Criminal Division acknowledged receipt of plaintiff's FOIA request and advised him that the request had not been received in the proper form, and before further action could be taken, additional information would be required.  Hsu Decl. ¶ 5.

34.     Specifically, the Criminal Division asked plaintiff to complete a "Privacy Act Identification and Request Form" and to identify which systems of records maintained by the Criminal Division plaintiff wanted searched.  Hsu Decl. ¶ 5.

35. By letter dated December 21, 2005, plaintiff returned the "Privacy Act Identification and Request Form" and indicated the systems of records that he wanted searched. Hsu Decl. ¶ 6.

36. Specifically, plaintiff requested that the following four systems of records be searched: JUSTICE/CRM-003 (File of Names Checked to Determine if Those Individuals have been the Subject of an Electronic Surveillance); JUSTICE/CRM-018 (Registration Files of Individuals who have Knowledge of, or have Received Instruction or Assignment in Espionage, Counterespionage, or Sabotage Service or Tactics of a Foreign Government or a Foreign Political Party); JUSTICE/CRM-019 (Requests to the Attorney General for Approval of Applications to Federal Judges for Electronic Surveillance); and JUSTICE/CRM-024 (Freedom of Information/Privacy Act Records). Hsu Decl. ¶ 10 & Ex. 3.

37. By letter dated January 27, 2006, the Criminal Division acknowledged receipt of the information provided by plaintiff on December 21, 2005, and advised that it would conduct a search. Hsu Decl. ¶ 7, Ex. 4.

38. The Criminal Division searched the four systems of records designated by plaintiff. Hsu Decl. ¶ 11.

39. Moreover, the Criminal Division also searched an additional system of records JUSTICE/CRM-001 (Central Criminal Division Index File and Associated Records), which is searched as a matter of course when the Criminal Division receives a request for records relating to any individual requester. Hsu Decl. ¶ 9.

40. Relying on its expertise in processing FOIA requests, the Criminal Division also requested that the Counterterrorism Section of the Criminal Division conduct a search for records. Hsu Decl. ¶11.

41.     As a result of these searches, no records responsive to plaintiff's request were located.  Hsu Decl. ¶ 13.

42.     By letter dated March 21, 2006, the Criminal Division advised plaintiff that it had completed its search for relevant Criminal Division records in his name and located no records responsive to his request.  Hsu Decl. ¶ 8 & Ex. 5.

**Plaintiff's FOIA Request to DHS**

43.     DHS does not maintain a central index of records that are retrieved by name or personal identifier.  Kendrick Decl. ¶ 5.  Thus, DHS regulations regarding FOIA requests require FOIA requesters to describe records in enough detail to enable Department personnel to locate the system of records containing them with a reasonable amount of effort.  <u>Id.</u>

44.     If a requester fails to provide file- or event-related information or any details why plaintiff believes DHS maintains records about him, DHS cannot even begin to search for records.  Kendrick Decl. ¶ 7.

45.     DHS responded to plaintiff's FOIA request on October 5, 2005.  Kendrick Decl. ¶ 8 & Attachment 2.

46.     DHS advised plaintiff that "The Department of Homeland Security does not maintain a central index of records based on individual names," and that, thus, plaintiff's request, did not provide sufficient information to conduct an adequate search.  Kendrick Decl. ¶ 8 & Attachment 2.

47.     This response also advised plaintiff that DHS would undertake a search if he provided more information about the request, but that if DHS did not receive a response from plaintiff withing 60 days of the date of the letter, DHS would administratively close the request.  Kendrick Decl. ¶ 8

48.     DHS has no record of receiving any further communication from plaintiff. Kendrick Decl. ¶ 8.

### Plaintiff's FOIA Request to TSA

49.     By letter dated October 4, 2005, TSA acknowledged receipt of the plaintiff's October 3, 2005, FOIA Request. Pavlick Decl. ¶ 6 & Ex. C.

50.     In light of the broad scope of plaintiff's FOIA request, on October 5, 2005, TSA's Freedom of Information Act Officer contacted plaintiff's counsel, Mr. Larry Klayman, via telephone to discuss the scope of the request and – in an effort to help focus TSA's search for responsive records – to obtain more information about Mr. Tooley's association or contacts with TSA. Pavlick Decl. ¶ 7.

51.     Based on this conversation, TSA's FOIA Officer understood that Mr. Klayman had narrowed the scope of his request to seek any record concerning the appearance of Mr. Tooley's name on a TSA watch list. Pavlick Decl. ¶ 7.

52.     TSA limited the scope of its initial search for responsive records to any TSA watch list records concerning Mr. Tooley. Pavlick Decl. ¶ 7; see also id. ¶ 15.

53.     By letter dated November 14, 2005, TSA denied plaintiff's request for expedited processing and for a fee waiver because plaintiff failed to meet the regulatory requirements of 6 C.F.R. §5.5 and 6 C.F.R. §5.11(k)(2). Pavlick Decl. ¶ 8 & Ex. D.

54.     By letter dated December 6, 2005, plaintiff appealed TSA's denial of his request for a fee waiver and expedited treatment. Pavlick Decl. ¶ 9 & Ex. E.

55.     On December 7, 2005, TSA contacted plaintiff's counsel via telephone, advised him that the TSA Office of the Ombudsman provided a watch list clearance protocol, and directed him to the TSA website to obtain the TSA Passenger Identity Verification Form that Mr.

Tooley could submit to initiate the clearance process. Pavlick Decl. ¶ 10.

56. By letter dated December 8, 2005, TSA responded to plaintiff's FOIA request. Pavlick Decl. ¶ 11 & Ex. F. TSA neither confirmed nor denied the existence of any records pertaining to plaintiff on any TSA watch list, pursuant to 49 U.S.C. §114(s) and 49 C.F.R. §1520.15. Id.

57. TSA's December 8, 2005, letter again advised plaintiff that the Office of the Ombudsman offered a procedure to expedite the watch list clearance procedures and provided the contact information for that office. Id.

58. Pursuant to 49 U.S.C. § 114(s) and implementing regulations at 49 C.F.R. Part 1520, Sensitive Security Information ("SSI") is exempt from disclosure notwithstanding the Freedom of Information Act, 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, or any other laws because release "would be detrimental to the security of transportation." 49 U.S.C. §114(s)(1)(C). Pavlick Decl. ¶ 20.

59. TSA watch lists are incorporated into Security Directives and Emergency Amendments issued to air carriers and constitute SSI under governing regulations at 49 C.F.R. §1520.5. Pavlick Decl. ¶ 20.

60. TSA does not disclose the names and identifying information of individuals on TSA watch lists as that information constitutes SSI, and any other answer would compromise information that is exempt from the disclosure requirements of the FOIA under 5 U.S.C. § 552(b)(3). Pavlick Decl. ¶ 20.

61. If TSA were to confirm in one case that a particular individual was not on a watch list, but was constrained in another case merely to refuse to confirm or deny whether a second individual was on a watch list, the accumulation of these answers over time would tend to reveal

SSI.  Pavlick Decl. ¶ 21.

62.     By letter dated January 4, 2006, TSA responded to plaintiff's December 6, 2005, appeal of TSA's fee waiver and expedited treatment denial.  Pavlick Decl. ¶ 12 & Ex. G.  TSA advised plaintiff that it had responded to plaintiff's FOIA request on December 8, 2005, and that there was no fee associated with processing his request.  Id.

63.     By letter dated February 7, 2006, plaintiff appealed TSA's December 8, 2005, response to his FOIA Request.  Pavlick Decl. ¶ 13 & Ex. H.  Plaintiff appealed first on the ground that TSA's refusal to confirm or deny whether Mr. Tooley is on a TSA watch list was unresponsive and stated that the FOIA Request "did not ask specifically for information about TSA watch lists."  Id.  Plaintiff then asserted that, even if the request encompassed information concerning TSA's watch lists, he is entitled to such information since he believed that he was improperly placed on a TSA watch list.  Id.

64.     Upon receiving plaintiff's appeal, TSA initiated a more extensive search for responsive records.  Pavlick Decl. ¶ 16.

65.     Specifically, because to search every TSA office across the company for documents responsive to plaintiff's broad request for all documents relating to him would be overly burdensome, TSA identified those offices that were most likely to have records concerning members of the general public.  Id.

66.     The following ten offices were identified as most likely to have responsive records and were directed to search for responsive documents: Executive Secretariat, Office of Chief Counsel, Legislative Affairs, Office of Transportation Security Intelligence, Operations and Technical Training Divisions, Internal Affairs, Office of Human Capital, Security Operations, Office of Transportation Threat Assessment and Credentialing (hereinafter

"TTAC"), and the Office of the Ombudsman. Each of these offices was directed to provide any responsive records to the FOIA office or, if no records were located, to provide negative responses to the FOIA office, and each did so. Pavlick Decl. ¶ 16.

67. With the exception of the Office of the Ombudsman and TTAC, none of the offices tasked to conduct a search located any record responsive to plaintiff's request after conducting a reasonable search. The offices performed both electronic and manual searches. Pavlick Decl. ¶ 17.

68. Upon searching its records, the Office of the Ombudsman and TTAC each located a record that may be responsive to plaintiff's request. Pavlick Decl. ¶ 18.

69. TSA compared the two records located by the Office of the Ombudsman and TTAC to the U.S. Department of Justice Certification of Identity Form (hereinafter "DOJ Certification") that was completed and signed by Mr. Tooley and which accompanied his October 3, 2006, FOIA request. Pavlick Decl. ¶ 4, 14. The DOJ Certification contains Mr. Tooley's full name, citizenship status, Social Security Number, current address, date of birth and place of birth. Pavlick Decl. ¶ 4.

70. TSA could not determine whether the located records pertained to plaintiff on the face of information Mr. Tooley provided in his DOJ Certification. Pavlick Decl. ¶ 14. The personal information provided by plaintiff on the DOJ Certification did not match the identifying information contained in the located records. Pavlick Decl. ¶ 18.

71. By letter dated April 24, 2006, TSA responded to plaintiff's appeal. Pavlick Decl. ¶ 14 & Ex. I. TSA affirmed the initial determination neither to confirm nor deny the existence of records indicating whether plaintiff is on a watch list. Id. Thus, plaintiff's appeal was denied in part. Id.

72. TSA's April 24, 2006, response to plaintiff's appeal also granted the appeal in part with respect to the scope of the records searched and advised that the FOIA Office had conducted a new search for records responsive to plaintiff's request. Pavlick Decl. ¶ 14 & Ex. I In order to determine whether the two records located in this search pertained to plaintiff, TSA asked plaintiff to provide to TSA: addresses used by Mr. Tooley during June 2004, and information concerning any contacts plaintiff had initiated with TSA, including the offices contacted, the general subject matter of the contact, and the approximate date range. Id.

73. If plaintiff provides additional information in a timely manner to allow TSA to determine whether the two records located pertain to him, all reasonably segregable non-exempt portions of such records will be released in an expeditious manner. Pavlick Decl. ¶ 22.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

KENNETH J. WAINSTEIN
United States Attorney

JOSEPH H. HUNT
Director, Federal Programs Branch

ELIZABETH J. SHAPIRO
Assistant Director, Federal Programs Branch

_____/s/ Rupa Bhattacharyya_____
RUPA BHATTACHARYYA (VA# 38877)
Senior Trial Counsel
Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C. 20044
Tel: (202) 514-3146
Fax: (202) 318-7593
Email: rupa.bhattacharyya@usdoj.gov

Dated: May 1, 2006.