**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SCOTT TOOLEY                                    )          CASE NO. 06 0306 CKK
                                                )
          Plaintiff,                            )
                                                )
v.                                              )
                                                )
PRESIDENT GEORGE W. BUSH, ALBERTO               )
GONZALES et. al.                                )
                                                )
          Defendants.                           )
_____/

**PLAINTIFF'S OPPOSITION AND MEMORANDUM OF LAW IN
OPPOSITION TO THE MOTION OF OFFICAL CAPACITY
DEFENDANTS -- ALBERTO GONZALES, MICHAEL CHERTOFF, AND
EDMUND HAWLEY – TO DISMISS UNDER 12(B)(1)
 AND FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ……………………………………………………….5

INTRODUCTION ……………………………………………………………...……9

ARGUMENT ……………………………………………………..……..……..……10

    I.     Opposition to Motion to Dismiss Under 12(b)(1)……………..……11

        1)  Rule 12(b) Standard of Review and the Simplified Pleading…..…..11
            Standard of Rule 8(a)

            a)  Under the Applicable Review Standard, This Court……….11
               Must Construe Pleadings in Plaintiff's Favor

            b)  The Simplified Pleading Requirement of Rule 8…….……...12
               Applies.

        2)  Plaintiff Has Standing and this Court has Jurisdiction…………….12
            to Address Defendants' Violations of FOIA and the
            United States Constitution

            a)  This Court has Jurisdiction Under 28 U.S.C. §1331………..12

            b)   Plaintiff Has Asserted Claims Against the Respective…….13
               Agencies Through the Official Capacity Defendants

        3)  Plaintiff's Pleadings Establish an Actual "Case or …………....…14
            Controversy" -- Plaintiff Has Alleged Actual, Concrete Injury
            Traceable to Defendants and Redressable by this Court.

            a)  Plaintiff has Alleged that He Suffered Actual Injury…...…15

            b)  Plaintiff Has Placed Defendants on Notice of……….…..…20
               Plaintiff's Claims for Actual Harm Caused by
               Defendants, and Plaintiff Has Pled More than Mere
               Surveillance

            c)  Plaintiff Has Alleged that He Has Been Detained….….……21
               and Subject  to Strict Searches, In Addition to Being
               Monitored

              i)  Plaintiff's First Amendment Rights Have Been………21
                  Chilled, Through Direct Physical Surveillance, in
                  Addition to Wiretaps

ii)       Defendants' Surveillance Methods Have Chilled.......22
Plaintiff's Speech, Interfered with Plaintiff's
Employment, and Prevented Plaintiff from Freely
Communicating with His Counsel.

iii)      Causation of the Harm is Established --The Alleged...22
Unlawful Pattern of Search and Surveillance Was
Conducted by Defendant Agencies

d)  Plaintiff's Claims Will Be Redressed By This Court's.................23
Favorable Decision

II.     Opposition to Motion for Summary Judgment as to Plaintiff's............25
FOIA Requests

1)  Summary Judgment Standard Favors Plaintiff and Defendants........25
Cannot Discharge their FOIA Obligations

2)  Plaintiff's FOIA Request to the Department of Homeland.............25
Security Was Proper, and the Department of Homeland Security
Failed to Conduct a Reasonable Search for Documents

a)  Plaintiff's Request for Information Was Reasonable,..........28
and Plaintiff's Case is Distinguishable From the Cases on
Which Defendants Rely

b)  Defendant Never Requested Plaintiff to Narrow ...............29
Plaintiff's Already Specific Request And, Instead,
Arbitrarily Instructed Plaintiff to Disclose Plaintiff's Belief
of Why DHS Would Maintain a File on Plaintiff

c)  The Kendrick Affidavit Establishes That DHS Did Not ......30
Conduct a Reasonable Search, Despite FOIA
Requirements

3)  This Court May Exercise Its Jurisdiction, Because Exhaustion........31
of Administrative Remedies Is a Prudential Consideration and is
Not Required, and Because Exhaustion of Administrative
Remedies Would Be Futile and Inadequate

4)  Plaintiff's FOIA Request to the Transportation Security...............33
Administration

a)  Plaintiff's FOIA Request to the TSA Was Reasonable.........33

        b)  The TSA's Withholding of Requested Documents…………37
            Pertaining to Scott Tooley is Improper, Because the TSA
            Offers No Reasonable Explanation for its Procedure

   5)  The Government is Not Entitled to Summary Judgment for the……38
       FOIA Claim, Because the Government Affidavits Fail to
       Describe the Documents Withheld and Fail to Describe the
       Justifications for Nondisclosure with Sufficient Specificity
       To Show that the Documents Fall within a Clear FOIA Exception
       and that an Adequate Search Was Conducted

   6)  Plaintiff Respectfully Requests That This Court Order the TSA……39
       to Deliver to this Court, for an In-Camera Inspection, an Index
       of Documents Pertaining to Scott Tooley, and the Documents
       Themselves, that TSA Requests to Withhold from Public
       Disclosure

   7)  Plaintiff's FOIA Request to the Justice Management Division……..40

CONCLUSION…………………………………………………………………40

## TABLE OF AUTHORITIES

### Cases

2006 WL 2371463 at *14 ........................................................................................26

*Aleknagik Natives Limited v. Andrus*, 648 F.2d 496 (9th Cir. 1980) ..............................31

*American Civil Liberties Union et. al. v. National Security Agency et. al.*, ___

F.Supp.2d ___, 2006 WL 2371463 (E.D.M.I. 2006) ..............................................32,33

*American Civil Liberties Union et. al. v. National Security Agency et. al.*, ___

F.Supp.2d ___, 2006 WL 2371463 (E.D.M.I. August 17, 2006)................................13

*Atkinson v. O'Neill,* 867 F.2d 589, 590 (10th Cir.1989)...................................................14

*Bayvue Apts. Joint Venture v. Ocwen Fed. Bank,* 971 F.Supp. 129, 132 n.

5 (D.D.C.1997)...................................................................................................12

*Brandon v. Holt,* 469 U.S. 464, 471-472 (1985).............................................................14

*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)................................................................12

*Dale v. I.R.S.*, 238 F.Supp.2d 99 (D.D.C. 2002).........................................................28,29

*Dept. of Air Force v. Rose*, 425 U.S. 352, 360-361 (1976) ..............................................38

*EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624 (D.C.Cir.1997).............11

*Goland v. CIA*, 607 F.2d 339, 352 (D.C.Cir.1978) .........................................................25

*Greenberg v. United States Department of the Treasury*, 10 F. Supp. 2d 3, 23

(D.C.Cir.1998) ...................................................................................................31

*Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir.1987)....................................................12

*Hepting v. AT & T Corp.*, ___F.Supp.2d___, 2006 WL 2038464 (N.D.Cal.2006) ..........33

*Herbert v. National Academy of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992) ............... 12

*Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*,

     483 U.S. 64 (1987) ........................................................................................... 14,15

*Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds,* 482

     U.S. 64 (1987) ..................................................................................................... 11

*Hohri,* 782 F.2d at 241 .......................................................................................... 12,14

*In re Grand Jury,* 525 F.Supp. 831 (D.S.C. 1981)...………………………………...19,20

*Keese v. United States*, 632 F.Supp. 85 (S.D.Tex. 1985) ........................................... 28,29

*Kentucky v. Graham,* 473 U.S. 159 (1985)................................................................ 14,23

*Kowal v. MCI Commun. Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994) ............................. 11

*Krikorian v. Department of State*, 984, F.2d 461, 468 (D.C.Cir.1993).......................... 26

*Lee v. United States Department of Justice*, 235 F.R.D. 274 (W.D. Penn. 2006) ....... 31,32

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ......................................... 24

*Mason v. Callaway*, 554, F. 2d 129 (4th Cir.1977).................................................... 28,29

*Mayer, Brown, Rowe, & Maw, LLP v. Internal Revenue Service*, 2006 WL 2425523

     (D.D.C. August 21, 2006)....................................................................................... 13

*McDonnell v. United States*, 4 F.3d 1227 (3d Cir. 1993).................................................. 32

*McGehee v. C.I.A.,* 697 F.2d 1095 (D.C.Cir.1983).................................................... 26,37

*McGehee v. C.I.A.*, 697 F.2d 1095, 1100 (D.C.Cir.1983) .............................................. 26

*McKart v. United States*, 395 U.S. 185, 193 (1969) ....................................................... 32

*Miller v. Department of State*, 779 F.2d 1378, 1382 (8th Cir. 1989)............................... 25

*Oglesby v. Department of the Army*, 920 F.2d 57, 68 (D.C.Cir.1990)........................ 25,26

*Patterson v. IRS*, 56 F. 3d 832, 836 (7th Cir. 1995)......................................................... 38

*Rugierio v Untied States Dep't of Justice*, 257 F.3d 534 (6th Cir. 2001) ........................29

*Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v.*

    *Fitzgerald,* 457 U.S. 800 (1982) .............................................................................12

*Steinberg v. Department of Justice*, 23 F.3d 548, 551 (D.C.Cir.1994)...........................30

*Student Members of SAME et. al. v. Rumsfeld (in his official capacity),* 321 F.Supp.2d

    388 (D.C.T. 2004) ...............................................................................................13,23

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) .................................................12

*Taylor v. United States Treasury Dep't*, 127 F.3d 470 (5th Cir.1997) ............................32

*Tozzi v. U.S. Dept. of Health and Human Services, et. al.*, 271 F.3d 301, 307 ...........15,23

*Transamerica Leasing, Inc. v. La Republica de Venezuela,* 21 F.Supp.2d 47, 55

    (D.D.C.1998)........................................................................................................12

*United Presbyterian Church in the U.S.A. et. at. v. Reagan et. al.,* 738 F.2d 1375

  (D.C.Cir. 1985)…………...…………………………………………………………….21

*United States Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989) ...................26

*Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973) .............................................................39

*Williams v. New Castle County*, 970 F.2d 1260, 1266 (3rd Cir. 1992)............................12

**Statutes**

28 U.S.C. §§2201-02 ............................................................................................. 12,13

5 U.S.C. §552..........................................................................................................13

5 U.S.C. § 552(a)(3)(A).............................................................................................27

5 U.S.C. § 552(a)(3)(A)(ii) ........................................................................................27

5 U.S.C. §552(a)(4)(B)..............................................................................................26

50 U.S.C, §1803(a)....................................................................................................15

28 U.S.C. §1331 .......................................................................................... 12,13

**Rules**

Fed. R. Civ. P. 8(a)(2) .................................................................................. 12

Fed.R.Civ.P. 56(c) ....................................................................................... 25

**Other Authorities**

*http://www.dhs.gov/interweb/assetlibrary/privacy_advcom_12-2005_mins_pm.pdf* ....... 18

*http://www.pbs.org/newshour/bb/law/jan-june06/gonzales_1-23.html* ........................... 16

*http://www.pbs.org/newshour/bb/law/jan-june06/leahy_1-23.html* ................................ 18

*http://www.sfgate.com/cgibin/article.cgi?file=/chronicle/archive/2006/07/19/MNG25K1*

   *MLK1.DTL&type=politics* ........................................................................... 17

*http://www.usdoj.gov/oig/reports/FBI/a0527/final.pdf* .................................................. 19

*http://www.whitehouse.gov//news/releases/2005/12/20051219-2.html* ........................... 17

S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965) .................................................. 38

The New York Times, January 2, 2006, "Bush Defends Spy Program and Denies

   Misleading Public." ..................................................................................... 32

Associated Press, "Bush Says His Privacy Must Be Protected," April 14, 2005 ..........33

## INTRODUCTION

The Bush Justice Department has moved, on behalf of the Defendants sued in their official capacities, to dismiss Plaintiff's challenge to the legality of the Bush administration's surveillance programs, including the warrantless wiretapping by the Defendants and the National Security Agency ("NSA"). Defendants' attack on Plaintiff's "standing," is a thinly veiled attempt to prevent a law-abiding citizen from determining the scope and nature of government monitoring and surveillance against him and prevent this Court from reviewing whether the Defendants' surveillance and monitoring programs violate the law and the United States Constitution. In addition, the Bush administration has moved for Summary Judgment on Plaintiff's claim of relief under the Freedom of Information Act ("FOIA").

Unfortunately, this case is but one of many, in which the Bush administration aggressively is challenging citizens' abilities to seek redress and judicial review of the unchecked executive power of this administration. Plaintiff is a law student, and he was an aide to former Congressman, and current Securities and Exchange Commission Chairman, Christopher Cox, yet even he can not successfully navigate the "system" and obtain legitimate information from the government pursuant to a reasonable FOIA request. Plaintiff seeks judicial assistance, as set forth in his Complaint, because the Bush administration continues to fail, or refuse, to provide him with reasonable responses to his FOIA requests and has refused to acknowledge reasonable requests for information.

Moreover, Plaintiff is an admitted critic of this administration and was placed under government surveillance after he made innocent comments to airline officials,

concerning obvious problems with the failure of airlines to scan luggage that airline passengers checked with the airline. In addition to seeking this Court's assistance in obtaining reasonable responses to his FOIA requests, Plaintiff's Complaint plainly seeks this Court's injunctive and declaratory relief to stop the Bush administration from unlawfully detaining, searching, and monitoring him.

Defendants are incorrect in their application of the law and facts. Under the liberal pleading standards of this Court, and accepting as true, the facts as alleged, Plaintiff has established his standing against the agencies that have failed to respond to his FOIA requests and now seek to prevent judicial review of the application of their surveillance, monitoring and wiretapping programs that violate the law and Plaintiff's rights under the Constitution.

## LEGAL ARGUMENT

Defendants request that this Court ignore the pleadings and find that Plaintiff has not plead a claim against Defendants and their respective agencies. In their Motion, Defendants attack the specificity and artfulness of Plaintiff's pleading, which is not a ground upon which to dismiss a claim under the liberal federal pleading standards. Indeed, under the pleading standards, Defendants and their respective agents are on notice of the alleged claims.

Whether Plaintiffs can prove the allegations is not a proper basis to dismiss claims at this stage in the litigation. Plaintiff as set forth below, Plaintiff has presented through his Complaint and the attached Affidavit (Exhibit C) that he has suffered actual harm and that genuine issues of material fact remain to be decided by this Court.[1]

---

[1] Defendants' Motion challenges Plaintiff to plead with more specificity, a requirement that is not required under the Federal Rules of Civil Procedure. If Plaintiff's allegations are taken as true, as they should be for

Accordingly, this Court should deny Defendants' Motion for Summary Judgment on the FOIA Claims and to Dismiss Plaintiff's claims for Injunctive and Declaratory relief.

# I.    OPPOSITION TO MOTION TO DISMISS UNDER 12(b)(1).

### 1)  Rule 12(b) Standard of Review and the Simplified Pleading Standard of Rule 8(a)

#### a)    Under the Applicable Review Standard, This Court Must Construe Pleadings in Plaintiff's Favor.

In general, a motion to dismiss under Federal Rule of Civil Procedure 12(b) should not prevail "unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." *Kowal v. MCI Commun. Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). At this stage of the litigation, Plaintiff's complaint must be construed liberally, and he should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624 (D.C.Cir.1997).

Here, in ruling upon the Bush administration's Motion to Dismiss brought under Rule 12(b)(1), this Court must construe the allegations in the complaint in the light most favorable to Plaintiff. *See, e.g., Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds,* 482 U.S. 64 (1987). In evaluating whether subject-matter jurisdiction exists, the court must accept as true all of the Complaint's well-pled factual

---

purposes of this Motion, then there is no question that Defendants have been provided fair notice of the claims against them. 35A C.J.S. Fed. Civ. Pro §301 (2006). Defendants incrediously state that they are not on notice of the claims against them, yet Defendants seek to marginalize as "irrelevant" Plaintiff's allegations concerning the alleged unconstitutional wiretapping program instituted by NSA in concert with the other Defendants. It is implausible that Attorney General Gonzales and the Department of Justice have not been placed on notice of the claims against them for their direct participation and roles in advising, approving, and causing Plaintiff to: 1) be subject to the National Security Agency's unconstitutional wiretap program; 2) be placed on at least one of TSA's watch lists, and 3) be unlawfully monitored by government agencies, in violation of the United States Constitution's protections and safeguards.

allegations and draw all <u>reasonable</u> inferences in Plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982). Additionally, if the Court deems it necessary, the Court may consider materials outside of the pleadings to resolve the question of whether it has jurisdiction to hear the case. *See, e.g., Herbert v. National Academy of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992); *Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir.1987); *Hohri,* 782 F.2d at 241; *Transamerica Leasing, Inc. v. La Republica de Venezuela,* 21 F.Supp.2d 47, 55 (D.D.C.1998); *Bayvue Apts. Joint Venture v. Ocwen Fed. Bank,* 971 F.Supp. 129, 132 n. 5 (D.D.C.1997).

      b)      <u>The Simplified Pleading Requirement of Rule 8 Applies</u>.

Plaintiff's complaint need only satisfy the simplified pleading standard of Rule 8. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002); *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Under the Rules, a party must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In fact, the simplified pleading requirements require the Court <u>not</u> to dismiss a complaint <u>unless</u> it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Williams v. New Castle County*, 970 F.2d 1260, 1266 (3rd Cir. 1992) (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

    **2)**  **Plaintiff Has Standing and this Court has Jurisdiction to Address Defendants' Violations of FOIA and the United States Constitution**

      a)      <u>This Court has Jurisdiction Under 28 U.S.C. §1331.</u>

Plaintiff's Complaint asserts, among other bases, that this Court has jurisdiction over these claims pursuant to 28 U.S.C. §1331. Complaint at ¶14. Additionally, Plaintiff's claims are authorized by 28 U.S.C. §§2201-02. *Id.* at ¶1. Under §1331, this

Court has jurisdiction to hear matters that arise under "the Constitution, laws, or treaties of the United States" and also to determine if an agency has violated the FOIA, 5 U.S.C. §552. *Mayer, Brown, Rowe, & Maw, LLP v. Internal Revenue Service*, 2006 WL 2425523 (D.D.C. August 21, 2006); *See also American Civil Liberties Union et. al. v. National Security Agency et. al.*, ___ F.Supp.2d ___, 2006 WL 2371463 (E.D.M.I. August 17, 2006) (holding, in a case arising under 28 U.S.C. §1331, that Plaintiffs had standing under Article III to challenge the constitutionality of, among other matters, the federal government's "secret" wiretapping of United States citizens); and *Student Members of SAME et. al. v. Rumsfeld (in his official capacity),* 321 F.Supp.2d 388 (D.C.T. 2004) (finding, in a case arising under 28 U.S.C. §1331, that Plaintiffs had standing to assert claims against the Department of Defense for violations of their constitutional rights).

It is clear that Plaintiff's Complaint seeks this Court's relief to determine whether: 1) the Bush administration through the Department of Justice, the Department of Homeland Security, and the Transportation Safety Administration, and their agents, in concert and with the assistance of the National Security Administration, improperly engaged in a pattern of surveillance and illegal wiretaps, without warrant and secretly done, in violation of the Constitution and laws of the United States.  Complaint at ¶¶39, 52, 61, 71.  Moreover, Plaintiff asserts that Defendants violated 5 U.S.C. §552 by failing to properly respond to his legitimate request for information.  Thus, Plaintiff's Complaint is properly before this Court to address Plaintiff's claims for declaratory and injunctive relief under 28 U.S.C. §§2201-02.

     b)   Plaintiff Has Asserted Claims Against the Respective Agencies
             Through the Official Capacity Defendants

It is established that "official-capacity" suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159 (1985). Moreover, the Supreme Court has established that, provided that the government entity receives notice and an opportunity to respond, an "official-capacity" suit is to be treated as a suit against the entity. *Brandon v. Holt,* 469 U.S. 464, 471-472 (1985); *see also Atkinson v. O'Neill,* 867 F.2d 589, 590 (10th Cir.1989) (holding, in a suit against "official capacity" defendants for acts that were taken by and on behalf of the agency, that the action is, in fact, one against the government agency itself). Accordingly, Plaintiff's claims against Gonzales, Chertoff, and Hawley properly are construed as claims against their respective agencies: the Department of Justice, the Department of Homeland Security, and the Transportation Safety Administration, for their concerted and coordinated acts in approving, administering, and participating in the monitoring and surveillance of Plaintiff, in violation of his Constitutional rights. Complaint at ¶¶39, 52, 61, 71.

**3)    Plaintiff's Pleadings Establish an Actual "Case or Controversy" -- Plaintiff Has Alleged Actual, Concrete Injury Traceable to Defendants and Redressable by this Court.**

Considering the allegations in favor of Plaintiff, as this Court must for purposes of deciding this Motion, Plaintiff's Complaint clearly and concisely pleads that the Bush administration Defendants have engaged in a pattern of unconstitutional, illegal wiretapping and surveillance of Plaintiff.[2] *Hohri v. United States*, 782 F.2d 227, 241

---

[2]    Though they "question" whether the Complaint could be read "to seek injunctive relief" against the official capacity defendants, Defendants' challenge whether Plaintiff has standing to seek injunctive relief. Mot. to Dismiss at 22. Indeed, Defendants' acknowledge that Plaintiff has requested that this Court: 1) order that Defendants immediately cease and desist all wiretapping and surveillance activities against Plaintiff; 2) order Defendants to remove Plaintiff's name from any and all watch lists that may indicate that

(D.C. Cir. 1986), *vacated on other grounds*, 483 U.S. 64 (1987).  To determine whether Plaintiff has standing to challenge the constitutionality of Defendants' actions this Court must examine the nature of the "injury-in-fact" that Plaintiff has alleged. *Tozzi v. U.S. Dept. of Health and Human Services, et. al.*, 271 F.3d 301, 307 (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Indeed, to establish Article III standing, Plaintiff need only show: (1) that he has suffered an "injury in fact;" 2) that there is a causal connection between the injury complained of and the defendant, such that the injury is fairly traceable to the challenged action of the defendant, and 3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 560-61.

   a)   <u>Plaintiff has Alleged that He Suffered Actual Injury</u>.

As this Court is aware, the Bush administration, and some of the named defendants, have admitted to authorizing and enabling various government agencies to knowingly circumvent Title III and 50 U.S.C, §1803(a) by engaging in repeated on ongoing warrant less surveillance of United States' citizens (the "Surveillance Program").

For example, in response to inquiries about the "Surveillance Program," Defendant Gonzales stated that, "based upon the recommendation from the National Security Agency and, of course, the Department of Justice, the President decided this [the Surveillance Program] was something that he needed to do, he felt, in order to continue to

---

Plaintiff is associated with any terrorist activities or organizations; and 3) immediately and permanently enjoin Defendants from engaging in further illegal wiretapping and surveillance activities against Plaintiff. Mot. to Dismiss at 21-22.   Under the liberal pleading standards of this Court, there can be little question that Defendants are on notice that Plaintiff seeks to stop Defendants' pattern of allegedly illegal and unconstitutional surveillance and wiretapping of Plaintiff.

make America safe." *Available at: http://www.pbs.org/newshour/bb/law/jan-*

*june06/gonzales_1-23.html* (last accessed August 29, 2006).

Moreover, Defendant Gonzales admitted, in response to direct questioning, that

the government deliberately circumvented the Foreign Intelligence Surveillance Act

("FISA") and the FISA Court.  On January 23, 2006, when asked why the Bush

administration did not follow the existing legal procedures in place under FISA,

Defendant Gonzales stated:

> Well, FISA has been very, very important. It's an extremely
> complicated statute, Jim. And it's been very effective in
> dealing with terrorists. And we've used it extensively in
> connection with the war on terrorism.
>
> But for operational reasons, there were some issues that
> made it difficult to use FISA and --
>
> Again, I can't get into much of the details without divulging
> much of what the program that continues to remain
> classified. . .
>
> But if we could have used FISA, of course, why wouldn't
> we have used FISA? It is a process that is tested and of
> course if we could have used FISA and felt that the country
> was secure, we would have used FISA. . .
>
> What I'm saying is that there are operational constraints
> that existed upon the ability of our government to gather up
> information about terrorists that made it certainly more
> difficult to gather up electronic surveillance of the enemy.

*Id.*

It is undisputed that the Bush administration Defendants have admitted publicly to

the following actions: (1) the Surveillance Program exists; (2) the Surveillance Program

operates without warrants; and (3) the Surveillance Program targets communications

where one party to the communication is outside the United States, and where the

government has a "reasonable basis" from which to conclude that one party to the communication is a member of al Qaeda, is affiliated with al Qaeda, is a member of an organization affiliated with al Qaeda, or is working in support of al Qaeda.

As the District Court noted *in American Civil Liberties Union et. v. National Security Agency et. al.*,

> The TSP is not hypothetical, it is an actual surveillance program that was admittedly instituted after September 11, 2001, and has been reauthorized by the President more than thirty times since the attacks. The President has, moreover, emphasized that he intends to continue to reauthorize the TSP indefinitely.

2006 WL 2371463 at *14; a*vailable at http://www.whitehouse.gov//news/releases/2005/12/20051219-2.html* (last accessed on August 29, 2006).

Moreover, in July 2006, Defendant Gonzales publicly acknowledged that President Bush blocked a Justice Department investigation of the National Security Agency's warrantless surveillance program, by refusing to give security clearances to attorneys who were attempting to conduct the probe. *See http://www.sfgate.com/cgi-bin/article.cgi?file=/chronicle/archive/2006/07/19/MNG25K1MLK1.DTL&type=politics* (last accessed on August 29, 2006).

Thus, there can be no question that the Surveillance Program exists and, more importantly, that the Executive Branch of the United States Government is dedicated to avoiding any inquiry into the Surveillance Program's propriety, under the guise that such an inquiry would "harm the nation." The aforementioned statements and admissions

merely are summaries of an extensive program and provide a context for Plaintiff's claims and the need for independent judicial review.[3]

The pattern of secrecy and the aggressive actions taken by the Bush administration after September 11, 2001, strongly suggest that the Surveillance Program itself is just the "tip of the iceberg" when it comes to potentially unconstitutional actions that the government has taken against United States citizens, including Plaintiff. Plaintiff's Complaint alleges that he is subject to a wide program of surveillance, of which the NSA Surveillance Program is just <u>one</u> part.

For example, Plaintiff alleges that in consent with NSA **"[w]ith knowing and/or reckless disregard for established legal procedure, Defendants jointly and severally conceived, ordered, and implemented the illegal wiretapping scheme."** Complaint at ¶43. In addition to the allegation that he has been wiretapped, Plaintiff also has alleged that he is frequently detained and unreasonably searched at airports.[4]

_____

[3]    As noted by United States Senator Patrick Leahy, in direct response to the above-quoted statements of Defendant Gonzales,

> I want to make it very clear that the illegal spying on Americans is not authorized by the Congress or by any law whatsoever. This is why I question they're trying to keep us safe from terrorists . . .We all want to be safe from terrorists. I don't know a Democrat or a Republican who feels otherwise. We want to be safe. <u>But we also want the laws to be followed in this country.</u>

(<u>emphasis</u> <u>added</u>) *Available at: http://www.pbs.org/newshour/bb/law/jan-june06/leahy_1-23.html* (last accessed on August 29, 2006).

[4]    Plaintiff's allegation that he was detained and subject to "strict search" at airports is supported by Defendant, TSA's admission that thousands of people were "mistakenly" included on a TSA watch list and subject to search and delays. As admitted by TSA, "Of the 30,000 people who said they were mistakenly matched to names on the list, none ever had been kept from boarding an airplane, Kennedy said. Their names appeared only on a "selectee list," where members are singled out for additional screening." *Available at: http://www.dhs.gov/interweb/assetlibrary/privacy_advcom_12-2005_mins_pm.pdf* (last accessed on August 29, 2006).

Plaintiff specifically alleges that, in response to statements that Plaintiff made to airline officials, concerning the perceived lack of security on airliners, Plaintiff has been: 1) placed on various watch lists[5]; 2) subjected to improper detention and strict searches at airports; 3) subject to wiretaps; and 4) subjected to improper surveillance by various agencies. Complaint at ¶¶2, 21, 24, 32-34, 39, 43, 46-48, and 71.

Although Defendants urge this Court to find that Plaintiff's allegations are conclusory and do not establish injury or direct harm, this is untrue. First, Plaintiff has alleged more than the mere fact that he was wiretapped; specifically, Plaintiff has alleged and declared that he was subject to unreasonable detention and "strict search" on more than one occasion, _after_ Plaintiff made comments about airline security. Moreover, Defendants have effectively admitted that Plaintiff is on a travel "watch list." The scope of Plaintiff's injury goes well beyond wiretaps and includes other surveillance and unconstitutional actions by Defendants. Plaintiff has alleged direct and concrete injury from his detention and search at airports.

In addition to the detention and searches, Plaintiff has alleged that he has been subject to wiretapping, including, but not limited to, the well-publicized Surveillance Program. Defendants cite _In re Grand Jury_, 525 F.Supp. 831 (D.S.C. 1981) for support that Plaintiff's allegations of problematic phone connections and clicking on phone lines are insufficient to claim that Plaintiff has been wiretapped. However, given the widespread knowledge of the Surveillance Program and admissions by the Bush

---

[5] The broad scope of the "watch lists" is stated in Defendant, DOJ's own publication and indicates that Plaintiff may well be subject to one of the lists, because of the broad classifications of those to be included on the lists. _Available at: http://www.usdoj.gov/oig/reports/FBI/a0527/final.pdf_ (last accessed August 29, 2006).

administration Defendants as to the very existence of the wiretapping, Defendants'

reliance on *In re Grand Jury* is misplaced.

Here, unlike in *In re Grand Jury*, Defendants admit to the existence of the

wiretapping program.  Moreover, the Bush administration has admitted that the program

is being conducted <u>without</u> warrants.  Thus, unlike in *In re Grand Jury*, it is not merely

hypothetical that this type of surveillance is taking place.  When viewed in conjunction

with Plaintiff's other allegations – placement on a watch list, detention and repeated and

incessant "strict searches" at airports, and other forms of visible and covert surveillance –

Plaintiff has pled "concrete" allegations that he has suffered actual harm and is subject to

continued illegal surveillance.

Additionally, in contrast to the *In re Grand Jury* facts, Plaintiff is not seeking to

interfere with a "grand jury" proceeding, but is a private litigant seeking redress.  Thus,

the concerns raised in *In re Grand Jury*, namely interfering with a grand jury

investigation, are inapposite.

Indeed, all reasonable inferences support Plaintiff's allegations that Plaintiff has

been, and continues to be, and at a minimum, subject to actual harm when he travels and

speaks on the telephone.

      b)     Plaintiff has Placed Defendants on Notice of Plaintiff's Claims for Actual
               Harm Caused by Defendants, and Plaintiff Has Pled More than Mere
               <u>Surveillance.</u>

Under the liberal pleading standards of Rule 8, this Court should find that Plaintiff

has placed the Bush administration Defendants on notice of Plaintiff's claims for actual

and palpable harm caused by Defendants' alleged creation, approval, and participation in

the broad program to unlawfully, detain, search, watch, and surveil Plaintiff.

Contrary to Defendants' tortured reading of the Complaint, Plaintiff has pled more than "mere surveillance." In support of their Motion to Dismiss for lack of standing, Defendants heavily rely on the holding set forth by the Court of Appeals in *United Presbyterian Church in the U.S.A. et. al. v. Reagan et. al.*, 738 F.2d 1375 (D.C. Cir. 1985). Although Defendants correctly state the "three forms" of a "chilling effect" that government surveillance can produce, the Defendants fail to acknowledge the factual differences between Plaintiff, Scott Tooley's allegations and those that the court found lacking in *United Presbyterian*.

> c)    Plaintiff Has Alleged that He Has Been Detained and Subject to <u>Strict Searches, In Addition to Being Monitored</u>.

Here, Plaintiff has alleged <u>more</u> than "mere surveillance," he has alleged that he actually has been detained and subject to "strict search." For example, Plaintiff attested that, in July 2004, he was subject to "degrading and unreasonable search at Omaha's Eppley Airfiled," after a TSA officer broadcast Plaintiff's name as a passenger that "needed additional screening," and searched Plaintiff's "groin area." Tooley Aff. at ¶¶13,14,15. Another, independently verifiable and concrete action occurred in March 2006, when Plaintiff was subject to further "physical monitoring" and wiretaps during a trip to Fort Worth, Texas. Tooley Aff. at ¶16. Thus, unlike the *United Presbyterian* allegations, Plaintiff's allegations describe not merely "fear" of surveillance, but actual, physical injury in conjunction with the surveillance.

> i)    Plaintiff's First Amendment Rights Have Been Chilled, Through <u>Direct Physical Surveillance, in Addition to Wiretaps</u>.

In addition to the "strict searches," the Bush administration Defendants directly "chilled" Plaintiff's First Amendment Rights, and, effectively, "gagged" Plaintiff.

Defendants "chilled" and "gagged" Plaintiff not only through the use of the "wiretaps," but also because of direct physical surveillance at Plaintiff's home.

Plaintiff attests that, in March 2005, in <u>response</u> to Plaintiff's comments about the "Administration," Plaintiff was monitored by agents, who were parked in front of Plaintiff's home "for approximately six hours each day" when the President visited Plaintiff's town in March 2005. Tooley Aff. at ¶19.

> ii)    Defendants' Surveillance Methods Have Chilled Plaintiff's Speech, Interfered with Plaintiff's Employment, and Prevented <u>Plaintiff from Freely Communicating with His Counsel</u>.

Plaintiff's Complaint and Affidavit in Support of Plaintiff's Opposition to Defendants' Motion establish that Plaintiff has suffered more than the "chilling effect" of the surveillance, he has suffered concrete, actual harm. Plaintiff has attested that the wide pattern of surveillance, including, without limitation: inclusion on TSA and other Agency watch lists; various wiretaps, including but not limited to the NSA Surveillance Program; and direct surveillance of Plaintiff's home, are part of a wider "net of surveillance" that has, among other things: chilled Plaintiff's speech, interfered with Plaintiff's employment, prevented Plaintiff from communicating freely with Plaintiff's counsel. Tooley Aff. at ¶¶21,22,23,27.

Thus, Plaintiff clearly has pled more than a general "hypothetical" harm and has more than satisfied the standards requiring pleading of actual or imminent harm.

Although Plaintiff believes the pleading itself sets forth more than sufficient allegations, the attached Affidavit ensures that the "specific facts" necessary to defeat Defendants' Motion are before this Court.

> iii)    Causation of the Harm is Established --

The Alleged Unlawful Pattern of Search and Surveillance Was Conducted
<u>by Defendant Agencies</u>

The Bush administration Defendants' argument that the Plaintiff's injuries were

not "<u>caused</u> by the official capacity defendants" is premised on an incorrect

understanding of the law.  As set forth fully in Section (I)(2)(b) *supra.,* the Plaintiff's

claims are against the Defendant Agencies and are brought <u>through</u> their respective

"official capacity" directors.  *See, e.g., Kentucky v. Graham,* 473 U.S. 159 (1985); and

*Student Members of SAME et. al. v. Rumsfeld (in his official capacity),* 321 F.Supp.2d

388 (D.C.T. 2004) (finding, in a case arising under 28 U.S.C. §1331, that Plaintiffs had

standing to assert claims against the Department of Defense for violations of their

constitutional rights).  The alleged improper actions were conducted by the Defendant

agencies.

Moreover, this Court never has applied the more strict "tort" standard of

"causation" to determine the traceability and causal connection of the action. *Tozzi v.

Department of Health and Human Services et. al.*, 271 F.2d 301, 308 (D.C. Cir 2001).

Accordingly, for the purposes of determining whether Plaintiff has pled a claim for harm,

there can be no question that the alleged harm was "caused" by the Defendant agencies.

    d)     Plaintiff's Claims Will Be Redressed
           <u>By This Court's Favorable Decision</u>

Contrary to Defendants' incorrect statement and understanding of the law,

because the claims against the official capacity Defendants are, in fact, claims against

their respective agencies, and because the Defendant agencies' improper conduct harmed

Plaintiff, Scott Tooley, this Court's favorable decision will provide Plaintiff with redress.

As articulated by the United States Supreme Court in *Lujan v. Defenders of Wildlife*,

> "When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or foregone inaction).  If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it."

504 U.S. 555, 561-562 (1992).[6]

Here, Plaintiff is himself the object of the government's detentions, searches, and monitoring.  Defendants have caused, and Plaintiff has suffered and pled, specific, direct, and actual harm.  This Court's favorable decision will provide redress for that harm and will prevent Defendants from continuing to harm Plaintiff.

Moreover, under *Lujan*, because Plaintiff is the object of the government's unlawful action, there is little question that Plaintiff has been injured and that this Court's preventing the action will redress the harm.

Accordingly, the Bush administration Defendants' Motion to Dismiss for lack of standing under 12(b)(1) must be denied because:  (1) under the simplified pleading requirements of Rule 8(a) Defendants have been placed on fair notice that Defendants are

---

[6] To the extent that Defendants have relied upon *Lujan* for support, it should be noted that in *Lujan*, the Supreme Court applied a higher, more stringent standard for standing, specifically because the *Lujan* plaintiff's asserted injury arose "from the government's allegedly unlawful regulation (or lack or regulation) of someone else."  *See Lujan*, 504 U.S. at 562 (emphasis in the original).  Indeed, the Court stated that, in a case where the injury arises from the government's unlawful regulation of someone else, much more is needed to show causation and redressability, "because the existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts….'" *Id.* at 562 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989).  Only then does it "become the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 505 (1975).

Here, unlike in *Lujan*, Plaintiff's injury arose from the government's unlawful regulation of the Plaintiff himself; thus, as noted in *Lujan*, there is little question that the government action has caused Plaintiff injury and that a judgment preventing the government action will redress the harm. *Id.* at 561-562.

alleged to have committed, approved, and participated in the complained of violation of Scott Tooley's Constitutional Rights; and (2) under the standards for a Rule 12(b) Motion, accepting Plaintiff's allegations as true, there is no question that Plaintiff has alleged sufficient facts to establish that Defendants, through their respective agencies, participated in, and were aware of, and approved the alleged misconduct that directly has harmed, and directly continues to harm, Plaintiff.

## II.    OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S FOIA REQUESTS

### 1)    Summary Judgment Standard Favors Plaintiff and Defendants Can not Discharge their FOIA Obligations.

Summary judgment may be granted only if the pleadings show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

In a "FOIA" case, summary judgment is available to a defendant only if the agency proves that the agency has discharged fully its obligations under the FOIA, <u>after</u> the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester. *Miller v. Department of State*, 779 F.2d 1378, 1382 (8th Cir. 1989). In order to discharge its FOIA obligations, the agency must demonstrate that the requested documents have been produced, are unidentifiable, or fall within one of the Act's exemptions. *Goland v. CIA*, 607 F.2d 339, 352 (D.C.Cir.1978).

### 2)    Plaintiff's FOIA Request to the Department of Homeland Security Was Proper, and the Department of Homeland Security Failed to Conduct a Reasonable Search for Documents.

Under FOIA, upon a request by an individual for documents, an agency has a duty to conduct a reasonable search for documents responsive to the request, and FOIA

prohibits an agency from improperly withholding responsive documents. *Oglesby v. Department of the Army*, 920 F.2d 57, 68 (D.C.Cir.1990); *McGehee v. C.I.A.*, 697 F.2d 1095, 1100 (D.C.Cir.1983); 5 U.S.C. §552(a)(4)(B). The burden is on the government agency, <u>not</u> the requester, to demonstrate that the agency thoroughly searched for the documents where the documents might reasonably be found. *Krikorian v. Department of State*, 984, F.2d 461, 468 (D.C.Cir.1993); *United States Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989) (holding that the burden is on the agency to demonstrate, not the requester to disprove, that the material sought is not an agency record or has not been withheld improperly).

Incredulously, the Department of Homeland Security ("DHS") responded to Plaintiff's FOIA request as follows, **"The Department of Homeland Security does not maintain a central index of records based upon individual names."**[7] Exhibit A. Thus, DHS claimed that Plaintiff's request for documents referring to "Scott Tooley" did not provide sufficient information to enable a search. Exhibit A. Anthony Kendrick stated in his affidavit that absent "file-or event- related information or any details as to why the Department would maintain records," DHS's FOIA staff "cannot even begin to search for records." Exhibit A at ¶¶ 5, 7.

A withholding of requested documents that significantly impairs the requester's ability to obtain the records is to be deemed "improper" unless the agency can offer a reasonable explanation for its procedure. *McGehee v. C.I.A.,* 697 F.2d 1095

---

[7] It defies logic and imagination, and is simply implausible that the Department of Homeland Security does <u>not</u> maintain a "database of records based upon individual names." Indeed, such a response, if true, is <u>prima facie</u> evidence that the Department of Homeland Security cannot fulfill its own stated objectives to protect America from threatening individuals that, otherwise, are known as terrorists. If DHS' claims are true, then Plaintiff has much more to fear than being surveilled unlawfully. If DHS' statements are not true, then DHS' response is evidence that Defendants are not following the clear requirements of FOIA and must be subject to judicial review.

(D.C.Cir.1983).  DHS' explanation that it cannot conduct a search based upon individual names is neither reasonable, nor credible.  It is unbelievable that the DHS, legislated and heavily funded to protect the United States and its citizens from terrorism, in the wake of the tragic events of September 11, 2001, claims not to maintain an index of records based upon individual names.  For example, it is implausible that the agency would be unable to search records of an actual terrorist by name, as opposed to Plaintiff, who is an ordinary citizen caught in the web of government secrecy and prevarication, if not incompetence.

The regulations promulgated under FOIA require only a reasonable description of the requested documents. 5 U.S.C. § 552(a)(3)(A).  Plaintiff, provided such a reasonable description when he requested, "all filings, correspondence, memoranda, documents, reports, record, statements, audits, lists of names, applications, diskettes, letters, expense logs and receipts, calendar or diary logs, facsimile logs, telephone records, call sheets, tape records, video recordings, notes, examinations, and/or referenced opinions, folders, files, books, manual, pamphlets, forms, drawings, charts, photographs, electronic mail, and any other documents and things that refer to my client Scott Tooley."  Exhibit A at ¶6.

In order to obtain FOIA documents, the request must be made in accordance with the agency's regulations. 5 U.S.C. § 552(a)(3)(A)(ii). According to DHS's own regulations, records must be described in enough detail to enable Department personnel to locate the system of records containing them with a reasonable amount of effort.  Here, Plaintiff provided not only a reasonable description of the requested documents, but a sufficiently detailed list of documents, in full compliance with the agency's regulations governing FOIA requests.

a)    Plaintiff's Request for Information Was Reasonable, and Plaintiff's Case
Is Distinguishable From the Cases on Which Defendants Rely.

Although Defendants falsely claim that Mr. Tooley's request lacked specificity

and, thus, did not meet FOIA requirements that informational requests be reasonably

described, Mr. Tooley's request indeed was reasonable, and the cases cited by

Defendants can be distinguished on several grounds.

First, *Mason v. Callaway*, 554, F. 2d 129 (4th Cir.1977), involved a request by

individuals suspected of possible tax evasion.  The Fourth Circuit held that the taxpayers'

request for "all correspondence, documents, memoranda, tape recordings, notes, and any

other material pertaining to the atrocities committed against plaintiffs. . ." was

inadequately identified, and found that the government made a good faith effort to

comply with the request, "especially in view of the large number of documents actually

supplied to them by the government." *Id.* at 131 (emphasis added).  Here, by contrast,

DHS produced no documents and, instead, claimed that DHS had no way of locating

records using Scott Tooley's name.  Tooley's case is not a case where large numbers of

documents were produced, nor is it a case where his request was too broad to be

processed by DHS.  DHS has admitted that the reason that DHS did not produce to

Plaintiff documents is that DHS' system does not have the capability of accessing records

by name.

The remaining cases cited by Defendants also involve taxpayers.  In *Keese v.*

*United States*, 632 F.Supp. 85 (S.D.Tex. 1985),the plaintiff requested all files indexed

and maintained under her name or social security number and all documents containing

her name.   Her request was deemed not specific enough.  Likewise, in *Dale v. I.R.S.*, 238

F.Supp.2d 99 (D.D.C. 2002), the plaintiff's request was for any and all documents,

including, but not limited to, files that referred or related in any way to the plaintiff. Clearly, Mr. Tooley's request was far more specific than the requests submitted in *Keese* and *Dale*.

Further, all three cases cited by Defendants involve FOIA requests to the I.R.S., not the DHS. *Mason v. Callaway*, 554, F. 2d 129 (4th Cir.1977); *Keese v. United States*, 632 F.Supp. 85 (S.D.Tex. 1985)**;** *Dale v. I.R.S.*, 238 F.Supp.2d 99 (D.D.C. 2002). The two agencies are remarkably different. The I.R.S. maintains files on every individual that files taxes in the United States on a yearly basis, as well files for corporations and other entities. I.R.S. processes millions of tax returns each year and, in the cases that Defendants cite, reasonably requested from the plaintiffs the dates of the returns that the plaintiffs sought, in order to narrow the scope of the request. *Keese v. United States*, 632 F.Supp. 85 (S.D.Tex. 1985)**;** *Dale v. I.R.S.*, 238 F.Supp.2d 99 (D.D.C. 2002). Here, the DHS did not attempt to narrow Mr. Tooley's request and instead, produced no documents and claimed that its system was unable to process it.

      b)      Defendant Never Requested Plaintiff To Narrow Plaintiff's Already Specific Request And, Instead, Arbitrarily Instructed Plaintiff to Disclose Plaintiff's Belief of Why DHS Would Maintain a File on Plaintiff.

An agency may ask that a party narrow the scope of his or her request. *Rugierio v United States Dep't of Justice*, 257 F.3d 534 (6th Cir. 2001). Here, however, Plaintiff's request, by its very nature, is narrow. Although he worked for the office of former Congressman, and current Securities and Exchange Commission Chairman, Christopher Cox, Scott Tooley is a relatively unknown individual,[8] and, thus, logic suggests that the number of records that an agency would maintain on Scott Tooley would be limited.

---

[8] Plaintiff was subjected to, and cleared by, the government's extensive background check when Plaintiff worked in Congress.

Moreover, in response to Plaintiff's FOIA request, DHS did not ask Plaintiff to narrow his search, but, instead, DHS arbitrarily instructed Plaintiff to disclose to DHS why he believed that DHS would maintain any of the types of documents about him. It is not credible that DHS staff is unable to locate records using a name index, but that, if supplied a reason or explanation by Plaintiff as to why he believes the DHS maintains documents referring to "Scott Tooley", DHS staff then could locate the requested records. DHS response clearly is designed to obfuscate Plaintiff's ability to seek redress under FOIA. Thus, the agency's request was illogical, impermissible, and constituted an improper denial of a properly framed request for access to records.

Further, the inadequate (implausible) records location process that DHS claims to have adopted, itself constitutes a withholding of the requested documents, because the net effect of a records system that cannot be accessed or searched by "name" wholly frustrated, and significantly impaired, Plaintiff's ability to obtain any records.

> c)     The Kendrick Affidavit Establishes That DHS Did Not Conduct a
>        Reasonable Search, Despite FOIA Requirements.

Finally, this Court should deny Defendants' Request for Summary Judgment, because the affidavit submitted by J. Anthony Kendrick fails to demonstrate that DHS conducted a reasonable search, and Plaintiff, Scott Tooley, has demonstrated that there is some reason to believe that, if DHS had looked for them, responsive documents would have been produced.

As a threshold matter, an agency may try to prove the reasonableness of its search through affidavits of responsible agency officials, but the affidavits must be relatively detailed, non-conclusory, and submitted in good faith. *Steinberg v. Department of Justice*, 23 F.3d 548, 551 (D.C.Cir.1994). Further, if the agency has not made a

sufficient showing of a reasonable search, a FOIA requestor can avoid a granting of summary judgment by demonstrating "some reason to think that the documents would have turned up if the agency had looked for them." *Greenberg v. United States Department of the Treasury*, 10 F. Supp. 2d 3, 23 (D.C.Cir.1998).

Here, the affidavit submitted by J. Anthony Kendrick meets none of the above criteria and is neither detailed, nor non-conclusory, nor submitted in good faith. The explanation contained within the affidavit, that the Department of Homeland Security cannot retrieve records by name or personal identifier, is both bizarre and unbelievable on its face. Clearly, by providing his name and a reasonable request for documents to be searched, Plaintiff has demonstrated that the documents could have been located if DHS would have looked for them. Thus, this Court properly should deny Defendants' Request for Summary Judgment as to Plaintiff's FOIA claim and allow Plaintiff's claims to be heard on the merits.

> **3)    This Court May Exercise Its Jurisdiction, Because Exhaustion of Administrative Remedies Is a Prudential Consideration and Is Not Required, and Because Exhaustion of Administrative Remedies Would Be Futile and Inadequate.**

This Court is not deprived of jurisdictions as a result of the lack of an administrative appeal, as the Defendants incorrectly contend. Under the exhaustion of administrative remedies doctrine, even were it applicable here — which it is not — entitlement to judicial relief occurs only after administrative remedies have been exhausted. *Aleknagik Natives Limited v. Andrus*, 648 F.2d 496 (9th Cir. 1980). The doctrine must be applied on a case specific basis, keeping in mind the doctrine's purpose and the particular administrative scheme at-issue. *See Lee v. United States Department of Justice*, 235 F.R.D. 274 (W.D. Penn. 2006). Failure to exhaust administrative remedy is

merely a "prudential consideration." *Id.* at 287 (quoting *McDonnell v. United States*, 4 F.3d 1227 (3d Cir. 1993)); *McKart v. United States*, 395 U.S. 185, 193 (1969). Where the exhaustion of administrative remedies is futile, or where the unexhausted administrative remedy would be plainly inadequate, or if the administrative remedies are inadequate, exhaustion of administrative remedies is <u>not</u> required. *Lee v. United States Department of Justice*, 235 F.R.D. 274 (W.D. Penn. 2006) (citing *Taylor v. United States Treasury Dep't*, 127 F.3d 470 (5th Cir.1997)).

Through DHS' disingenuous request for Plaintiff's own personal belief as to why the agency would maintain records about him, the agency made it clear that it will not release to Plaintiff the requested information. It would have been futile to require Plaintiff to exhaust his administrative remedies, because the agency ultimately would have rejected Plaintiff's requests for records.

According to published news reports, in the fall of 2001, the NSA, in conjunction with other executive branch agencies, such as the TSA, launched a secret surveillance program to intercept, without judicial authorization, telephone and internet communications of citizens and lawful permanent residents living inside the United States. President Bush ordered the program in 2002 and, since then, has reauthorized the program more than thirty (30) times, stating, "It's a vital, necessary program." The New York Times, January 2, 2006, "Bush Defends Spy Program and Denies Misleading Public." In light of the administration's well-documented and unwavering support of the surveillance program, the legality of which other courts have seriously questioned and which currently is under review, Plaintiff's decision to forego further administrative remedies was practical. *American Civil Liberties Union et. al. v. National Security*

*Agency et. al.*, ___ F.Supp.2d ___, 2006 WL 2371463 (E.D.M.I. 2006); *Hepting v. AT & T Corp.*, ___F.Supp.2d___, 2006 WL 2038464 (N.D.Cal.2006). Furthermore, the government administration, just one month after the September 11, 2001 terrorist attacks, set a higher threshold for releasing information under the FOIA.

In a memo, former Attorney General John Ashcroft changed the policy of resolving disclosure disputes by releasing, not withholding, government information. Instead, Ashcroft required agencies to carefully consider national security, law enforcement concerns, and personal privacy concerns prior to releasing documents. Ashcroft reassured the agencies that the Justice Department would defend decisions not to release information, so long as there was "sound legal basis" for withholding requested documents. Associated Press, "Bush Says His Privacy Must Be Protected," April 14, 2005.

The government's articulated policy for withholding honest, prudent, and reasonable requests for information, and the DHS's refusal to supply the Plaintiff with a substantive response to his request for documents, demonstrates that exhaustion of Plaintiff's administrative remedies would have been futile.

**4)      Plaintiff's FOIA Request to the Transportation Security Administration.**

        a)      Plaintiff's FOIA Request to TSA Was Reasonable

On October 3, 2005, Plaintiff, Scott Tooley, submitted a FOIA request to the Transportation Security Administration ("TSA"). Together with the request, Plaintiff submitted a U.S. Department of Justice Certification of Identity Form. The form submitted by Plaintiff discloses his full name, "Scott Thomas Franklin Tooley," his social

security number, his citizenship statues, current address, date of birth, and place of birth. According to the language printed on the face of the Certification of Identity form, the purpose of the form is to "ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department." Exhibit B.

The request that Plaintiff submitted essentially was the same request as that outlined above and forwarded to DHS. Plaintiff requested, "Copies of all filings, correspondence, memoranda, documents, reports, records, statements, audits, lists of names, applications, diskettes, letters, expense logs and receipts, calendar or diary logs, facsimile logs, telephone records, call sheets, tape records, video recordings, notes, examinations and/or referenced opinions, folders, files, books, manuals pamphlets, forms, drawings, chars, photographs, electronic mail, and any other documents which refer to my client Scott Tooley."

After receipt of the request, the TSA contacted the undersigned. During the discussion, Mr. Klayman indicated that the Plaintiff believed himself to be on a TSA watch list due to a conversation that Plaintiff had with a Southwest Airlines employee, pursuant to the employee's having asked Plaintiff if he had any "comments, questions, or suggestions for Southwest Airlines." When this question was posed to Plaintiff, Plaintiff suggested that Southwest Airlines better screen baggage in the wake of the tragedies of September 11, 2001. When asked why this was necessary, Plaintiff responded that Southwest Airlines should better screen baggage that passengers checked, because a bomb could be placed aboard a plane.

Thereafter, Plaintiff began to notice problematic phone connections and intermittent clicking noises. The causes for the telephone problems likely are illegal wiretaps, placed by the government in response to Plaintiff's innocent comments to a Southwest Airlines booking agent. Plaintiff's counsel has ran this scenario by the reporter of The New York Times, Eric Lichtblau, who broke the story of the Bush administration's illegal wiretap program, and he too believes Scott Tooley was and is a likely "candidate" for illegal domestic surveillance based on information he obtained through government whistleblowers.

According to the affidavit submitted by Catrina M. Pavlick, the TSA officer responsible for processing FOIA requests made to the TSA, Ms. Pavlick concluded that Mr. Klayman had narrowed the scope of the request to seek only records of Plaintiff's name on a TSA watch list. Exhibit B. Mr. Klayman, in fact, was supplying additional information at the officer's request, in the spirit of cooperation, and did not limit the request to documents that pertained solely to watch list information.

Some two (2) months later, the TSA responded to the Plaintiff's FOIA request by refusing outright to confirm or deny "the existence of responsive records under the provisions cited above." Exhibit B, letter attached dated December 8, 2005. No documents were produced to Plaintiff, and the TSA's failed to provide Plaintiff with a substantive response.

Plaintiff then appealed on the ground that TSA's "*Glomar* response" was unresponsive and, further, that the FOIA request did not ask specifically for information about TSA watch lists. In the event that this Court construes Plaintiff's request as a request limited to TSA watch lists, based on Ms. Pavlick's verbal conversation with

Plaintiff's counsel, the Plaintiff asserted that he was entitled to the information as he believed he was improperly placed on a TSA watch list due to his suggestion to a Southwest Airline's booking agent for heightened security measures.  Plaintiff then requested that the TSA produce all documents responsive to his original request.

Again, two (2) months later, and over six months since filing his original request, Plaintiff received a response from the TSA that was not substantive.  The TSA claimed privilege, under Exemption 3, over any documents pertaining to a TSA watch list, and concluded that disclosure to Plaintiff of whether or not his named appeared on a watch list was tantamount to disclosure of "Sensitive Security Information."

The TSA then admitted that it had two (2) documents that potentially could be responsive, but then, disingenuously, withheld the documents from Plaintiff, claiming the necessity that Plaintiff provide more information to confirm that he was the person identified in the documents.

The TSA's request for additional information to confirm Plaintiff's identity was disingenuous, because Plaintiff, six (6) months prior, completed and submitted to the TSA a U.S. Department of Justice Certification of Identity Form, disclosing Plaintiff's full name, social security number, citizenship, current address, date of birth, and place of birth to.  According to the Department of Justice, the Certification of Identity Form itself ensures that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department.

Undoubtedly, the system in place frustrated Plaintiff, because Plaintiff already has supplied the TSA with all of the identification information that Plaintiff has, and, still, the

TSA has been unable to identify whether the two (2) responsive documents pertain to Plaintiff.

If Plaintiff, a law school graduate, Republican, and former Congressional aide to former California Congressman and current Chairman of the Securities and Exchange Commission, Christopher Cox, is unable to obtain information through reasonable FOIA requests, it begs the question, then who in this country can?  Not only has the government, over a period of many months, refused to provide responsive information to Plaintiff's FOIA requests, now that Plaintiff has sought judicial review, the Bush administration continues its pattern of secrecy and avoidance.  The Bush administration's real purpose is to avoid any challenge to the legality of its warrant less wiretapping and illegal surveillance and monitoring of United States' citizens.  Under this cloak of secrecy, a law abiding citizen, such as Scott Tooley, is unable to take any action to confirm whether his name is on such a watch list and, if it is, to clear his name and remove it from the watch list, because the TSA refuses to confirm or deny whether Plaintiff's name appears on any list or produce any documents that refer to Plaintiff.

> b)     The TSA's Withholding of Requested Documents
>         Pertaining to Scott Tooley is Improper, Because the
>         <u>TSA Offers No Reasonable Explanation for Its Procedure</u>.

An agency's withholding of requested documents that significantly impairs the requester's ability to obtain the records is to be deemed "improper," unless the agency can offer a reasonable explanation for its procedure.  *McGehee v. C.I.A.*, 697 F.2d 1095 (D.C.Cir.1983).  Here, the TSA's purportedly "reasonable explanation" is that the TSA cannot properly identify Plaintiff, even though Plaintiff has supplied to the TSA all of

information Plaintiff has regarding his identity, information that suffices under the U.S.
Department of Justice's Certification of Identity Form.

Because FOIA prohibits the improper withholding of documents, the agency
denied Plaintiff's properly framed request for access to records.

Regarding the "*Glomar* response" submitted by the TSA as a response to
Plaintiff's request, the Freedom of Information Act established a general philosophy of
full agency disclosure unless information was exempted <u>under clearly delineated</u>
<u>statutory language</u>.  S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965); *Dept. of Air Force v.*
*Rose*, 425 U.S. 352, 360-361 (1976).  Because FOIA's dominant objective is disclosure,
exemptions are construed narrowly; where an agency's refusal to disclose records does
not fit within a clearly delineated FOIA exemption, such refusal constitutes an improper
withholding. *Id.*

   5)    **The Government Is Not Entitled To Summary Judgment for the**
         **FOIA Claim, Because the Government's Affidavits Fail to Describe**
         **the Documents Withheld and Fail to Describe the Justifications for**
         **Nondisclosure with Sufficient Specificity to Show that the Documents**
         **Fall within a Clear FOIA Exception and that an Adequate Search**
         **Was Conducted.**

In a FOIA case, a court may grant summary judgment to the government based on
affidavits <u>only</u> if the affidavits submitted by the agency: (1) <u>describe the documents</u>
<u>withheld</u>; and (2) describe the justifications for nondisclosure in enough detail and with
sufficient specificity to demonstrate (i) that the withheld documents fall into a clearly
delineated FOIA exception and (ii) that an adequate search was completed. *Patterson v.*
*IRS*, 56 F. 3d 832, 836 (7th Cir. 1995).

Here, the government fails to meet its burdens under the standard.  As
justification for the nondisclosure, the TSA contends that Sensitive Security Information

is exempt from disclosure because release "would be detrimental to the security of transportation." Exhibit B, ¶20. The affidavit further states that TSA does not disclose the names and identifying information of individuals on TSA watch lists, because if TSA were to confirm in one case that a particular individual was not on a watch list, but was constrained in another case merely to refuse to confirm or deny whether a second individual was on a watch list, the accumulation of these answers over time would tend to reveal Sensitive Security Information.

The government affidavit fails to articulate a plausible or credible specific harm stemming from disclosure; it is unpersuasive that a statement in the negative, that Plaintiff is not on a terrorist watch list, is likely to harm national security.

The government also fails to meet its burden under the above criteria, because the affidavit fails to describe the documents withheld.

Finally, the government affidavit fails to meet its burden of showing that an adequate search was conducted.

**6)      Plaintiff Respectfully Requests That This Court Order the TSA to Deliver to this Court, for an In-Camera Inspection, an Index of Documents Pertaining to Scott Tooley, and the Documents Themselves, that TSA Requests to Withhold from Public Disclosure.**

Because the TSA's affidavit fails to describe the documents withheld from Scott Tooley, as required when requesting summary judgment in a FOIA case, Plaintiff requests that the TSA deliver to the Court for an in camera inspection, a "*Vaughn* index" of documents which the agency wishes to withhold from public disclosure, *see Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973) (ordering agency to submit index itemizing FOIA exemptions claimed for each requested document), **as well as the documents themselves.**

**7)**     **Plaintiff's FOIA Request to the Justice Management Division**

Upon reviewing the affidavits submitted by the various agencies which received Plaintiff's FOIA requests routed by the Justice Management Division (FBI, EROUSA, and DOJ's Criminal Division), it appears, that, while the FBI may have been somewhat more thorough than the other agency defendants, an adequate search may not have been conducted. Despite the affidavits submitted by the FBI, its claim to have searched the "central" database is likely misleading. As evidenced by numerous public disclosures and news reports, the database is not "centralized," but much of the relevant information is likely to be contained within local field offices. Given the historical problems[9] within inter-agency searching, it is likely that the FBI has not adequately searched all of the relevant records, and thus summary judgment should be denied absent a more explicit affidavit attesting whether all of the field offices were searched.

## CONCLUSION

For the aforementioned reasons, Plaintiff respectfully requests that this Court deny Official Capacity Defendants' Motion to Dismiss under 12(b)(1) and for Summary Judgment in its entirety. **Plaintiff also respectfully requests oral argument at the earliest possible date.**

---

[9] The purpose of calling the database "central" is to make one think that every record that the FBI has would be included here. It is widely known via press reports by Bill Gertz at the Washington Times and via U.S. Senator Charles Grassley that the Bureau is in the midst of a complete overhaul of its computer systems. This overhaul has been plagued by numerous problems, delays, and cost overruns. This transition tends to indicate that it is possible that responsive records have been left off the so-called "central" database.

Respectfully Submitted,


_____/s/  Larry Klayman

Larry Klayman, Esquire
 D.C. Bar# 334581
THE KLAYMAN LAW FIRM, P.A.
Attorneys for Plaintiff
Courvoisier Centre II
601 Brickell Key Drive, Suite 404
Miami, FL 33131
Telephone: (305) 579-3455
Facsimile: (305)  579-3454
Email:  leklayman@bellsouth.net

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was furnished to Rupa Bhattacharyya, Esquire, Senior Trial Counsel, Federal Programs Branch, U.S. Department of Justice, Civil Division, PO Box 883, 20 Massachusetts Ave., NW, Washington, D.C. 20044 via electronic filing and Federal Express on this 1st day of September, 2006:

_____/s/ Larry Klayman_____

Larry Klayman, Esquire
D.C. Bar# 334581
THE KLAYMAN LAW FIRM, P.A.
Attorneys for Plaintiff
Courvoisier Centre
601 Brickell Key Drive, Suite 404
Miami, FL 33131
Telephone: (305) 579-3455
Facsimile: (305) 579-3454
Email:  leklayman@bellsouth.net