IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SCOTT TOOLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-00306 (CKK) |
| | ) | |
| v. | ) | |
| | ) | |
| PRESIDENT GEORGE BUSH, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**REPLY IN SUPPORT OF MOTION OF THE OFFICIAL CAPACITY
DEFENDANTS TO DISMISS AND FOR SUMMARY JUDGMENT**

Plaintiff's opposition ("Pl's Opp."), Docket No. 14, to the Motion of the Official Capacity Defendants to Dismiss and for Summary Judgment ("Defts' Mot."), Docket No. 6, provides no adequate response to the showing made by the official capacity defendants in their opening brief that they are entitled to summary judgment on plaintiff's FOIA claims.  Nor – to the extent that plaintiff's Complaint states injunctive relief claims against the three official capacity defendants – does plaintiff provide any adequate response to those defendants' showing that plaintiff has failed to meet his burden of demonstrating jurisdiction.  Defendants' Motion, accordingly, should be granted in its entirety.

**I.  THE OFFICIAL CAPACITY DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS UNDER FOIA.**

    **A.  Attorney General Gonzales is Entitled to Summary Judgment.**

As fully described in defendants' opening papers, plaintiff's FOIA request to the Department of Justice was routed to three components for response:  the Federal Bureau of Investigation ("FBI"), the Executive Office of United States Attorneys ("EOUSA"); and the Criminal Division.  See Defts' Mot. at 4.  Plaintiff makes no response whatsoever to the

demonstrations made by EOUSA and the Criminal Division that they complied in all respects with the relevant provisions of FOIA. See Defts' Motion at 6-8 (discussing EOUSA's response); 8-10 (discussing the Criminal Division's Response). Plaintiff, accordingly, has abandoned any claims relating to the responses of these components, and as to the FOIA claims against these components, Attorney General Gonzales is entitled to summary judgment.

Moreover, with respect to the FBI, plaintiff's only response is to speculate that "an adequate search may not have been conducted" and to demand that "summary judgment . . . be denied absent a more explicit affidavit attesting whether all of the field offices were searched." Pl's Opp. at 40. This response is wholly inadequate to oppose the FBI's request for summary judgment for two reasons. First, if plaintiff sought to challenge the adequacy of the FBI's search, the appropriate place to begin was through an administrative appeal. See Elec. Privacy Info. Ctr. v. Dept. of Homeland Security, 384 F. Supp. 2d 100, 106 (D.D.C. 2005) (Urbina, J.) ("A requester dissatisfied with the agency's response that no records have been found may challenge the adequacy of the agency's search by filing a lawsuit in the district court after exhausting any administrative remedies.") (quoting Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999); see also Martin v. Court Servs. & Offender Supervision Agency, 2005 WL3211536 (D.D.C. 2005) (Bates, J.) (dismissing plaintiff's FOIA claims for lack of exhaustion where plaintiff failed to administratively appeal a "no records" response"). Plaintiff here failed to make any such appeal, see Defts' Mot. at 5 and Hardy Decl. ¶ 7, and that failure is fatal to his claim in this Court. See Wilbur v. Cental Intelligence Agency, 355 F.3d 675, 677 (D.C. Cir. 2004); Hidalgo v. Fed. Bureau of Investigation, 344 F.3d 1256, 1259 (D.C. Cir. 2003); Oglesby v. U.S. Dept. of the Army, 920 F.2d 57, 61-62 (D.C. Cir. 1990) (all holding that failure to exhaust administrative remedies precludes a lawsuit under FOIA).

Second, FOIA expressly provides that its disclosure requirements only apply "upon any request for records which . . . is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed . . . ." 5 U.S.C. § 552(a)(3)(A). Department of Justice regulations, in turn, expressly provide that "[f]or records held by a field office of the Federal Bureau of Investigation (FBI) . . . you must write directly to that FBI . . . field office address, which can be found in most telephone books or by calling the [FBI's] central FOIA office." 28 C.F.R. § 16.3(a); see also http://www.fbi.gov/contact/fo/fo.htm (providing contact information for each of the FBI's field offices). Plaintiff's request here was not sent to any FBI field office, but rather to the Department's Justice Management Division, which forwarded the request to the FBI Headquarters, see 28 C.F.R. § 16.3(a), and the request contained no specific information that would allow the FBI to determine which of its field offices, if any, might be expected to have information responsive to plaintiff's request.

Absent a proper FOIA request submitted to a field office in accordance with the published regulations, or any hint as to which offices reasonably might be searched, the FBI had no obligation to mount a nationwide search for records responsive to plaintiff's broad request, but could rely instead on the search of its Central Records System ("CRS") and Electronic Surveillance ("ELSUR") indices. See Hardy Decl. ¶¶ 20-21; Marks v. U.S. Dept. of Justice, 578 F.2d 261, 263 (9th Cir. 1978) (construing FOIA to require FBI to search all of its field offices would be "unreasonable"); Ray v. Fed. Bureau of Investigation, 441 F. Supp. 2d 27 (D.D.C. 2006) (Lamberth, J.) (confirming that a request for records maintained by a particular FBI field office must be submitted directly to that field office, and holding that "the FBI is not obligated to undertake a search of its field offices' records when a requester submits his request only to its headquarters") (citing cases); Biberman v. Fed. Bureau of Investigation, 528 F. Supp. 1140, 1144

(S.D.N.Y. 1982) ("it would be unreasonably burdensome to require the FBI to search its fifty-nine field offices in response to every FOIA request, particularly in view of the agency's demonstrated willingness to undertake field office searches when they are specifically requested"); see also Defts' Mot. at 6 (citing Voinche v. Fed. Bureau of Investigation, 412 F. Supp. 2d 60, 66 (D.D.C. 2006) (Lamberth, J.); Brunetti v. Fed. Bureau of Investigation, 357 F. Supp. 2d 97, 103 (D.D.C. 2004) (Leon, J.); Edmonds v. Fed. Bureau of Investigation, 272 F. Supp. 2d 35, 58 (D.D.C. 2003) (Huvelle, J.) (all confirming the adequacy of FBI FOIA searches conducted using CRS)).

Thus, plaintiff's speculative challenge to the adequacy of the FBI's search is insufficient to warrant denial of the FBI's request for summary judgment. Because EOUSA, the Criminal Division, and the FBI have all demonstrated their compliance with the requirements of FOIA, Attorney General Gonzales is entitled to summary judgment on plaintiff's FOIA claims.

**B.   DHS Secretary Chertoff is Entitled To Summary Judgment on Plaintiff's FOIA Claims.**

Plaintiff's exaggerated incredulity in the face of DHS's response to plaintiff's FOIA request is insufficient to pose any meaningful opposition to DHS's request for summary judgment. As fully described in defendants' opening papers, DHS denied plaintiff's FOIA request because DHS does not maintain "a central index of records based upon individual names." See Kendrick Decl. ¶ 8 & Attachment 2. As Mr. J. Anthony Kendrick, the Director of Departmental Disclosure for DHS, described in his sworn declaration provided to this Court, "the Department does not maintain a central index of records that are retrieved by name or personal identifier, and so it important to understand the nature of the request in context; i.e., why the requester believes that DHS may have records pertaining to the requester." Kendrick Decl. ¶ 15. Absent "file- or event- related information or any details as to why the Department would

maintain records" about any particular request for records, a reasonable search for records cannot be undertaken. Kendrick Decl. ¶ 17; see also http://www.dhs.gov (describing the information required from a FOIA requester seeking information about himself).[1]

Although plaintiff claims that DHS's explanation for its response to his FOIA request is "bizarre and unbelievable on its face," Pl's Opp. at 31; see also Pl's Opp. at 26 & n.7, it is plainly neither. DHS is massive federal agency encompassing a variety of separate components involved in a slew of different operations, including the Transportation Security Administration ("TSA"), Customs and Border Protection ("CBP"), the Secret Service, Citizenship and Immigration Services ("CIS"), Immigration and Customs Enforcement ("ICE"), the Federal Emergency Management Agency ("FEMA"), and the U.S. Coast Guard, as well as multiple other offices and departments. See Ex. A hereto (DHS Organization Chart), obtained at www.dhs.gov. Each of these components, many of which were absorbed from other federal agencies following the creation of DHS in 2003, maintains its own records, and as Mr. Kendrick attested, DHS "does not maintain a central index of records based upon individual names." Kendrick Decl. ¶ 8 (emphasis added).

---

[1] Specifically, DHS's website advises that "If you believe that the Department of Homeland Security may have records on you, in addition to providing personally identifying information, requesters must also provide the following additional information:
- An explanation of why you believe the Department would have information on you,
- Identify which component(s) of the Department you believe may have information about you,
- Specify when you believe the records would have been created, and
- Provide any other information that will help the FOIA staff determine which DHS component agency may have responsive records.

Without the additional information, an effective search cannot be conducted, and your request will be denied due to a lack of specificity."
http://www.dhs.gov/dhspublic/interapp/editorial/editorial_0316.xml; see also 6 U.S.C. §§ 5.3 & 5.21 (DHS regulations governing FOIA and Privacy Act requests).

Plaintiff's FOIA request sought, without any further specification whatsoever, "all . . . documents or things that refer to . . . Scott Tooley" located at DHS.  Kendrick Decl. Attachment 1.  DHS could not reasonably discern from this broad request whether plaintiff sought documents relating to applications for hurricane assistance from FEMA, an interaction he may have had with a Customs official or a member of the Coast Guard, an ongoing or terminated immigration proceeding, records relating to his past employment or background investigations, or any of the hundreds of thousands of other interactions with the general public in which DHS is involved on a daily basis.  In other words, plaintiff's broad request provided no hint of any "file- or event-related information" that might have enabled DHS to formulate a reasonable search among its various components or to render some other appropriate response.

Moreover, plaintiff failed to make any such clarification of his request when asked to do so, see Kendrick Decl. Attachment 2 (seeking information regarding "the DHS component/agency you believe created and/or controls the records, the time period you believe the records or files were created and the purpose for which the records were compiled), and failed to take an administrative appeal that might have resulted in the framing of plaintiff's request in a manner that might have allowed a reasonable search.  Id. ¶ 8.  DHS – a federal agency which interacts with the public on variety of issues on any given day – simply cannot be expected to discern from plaintiff's broad request where, among its multitude of components, offices, and records maintenance systems, DHS might begin a search for records "that refer to . . . Scott Tooley."  Such a request is, to put it simply, unreasonable, and, to require a search in response to such a request places an unreasonable burden upon the agency.  See Am. Fed. of Govt. Employees v. Dept. of Commerce, 907 F.2d 203, 207 (D.C. Cir. 1990) ("An agency need not honor a request that requires an 'unreasonably burdensome search'") (quoting Goland v.

-6-

Central Intelligence Agency, 607 F.2d 339, 353 (D.C. Cir. 1878); see also Defts' Mot. at 12-13 (demonstrating that "FOIA requests for all records concerning a requester are too broad," citing Dale v. Internal Revenue Serv., 238 F. Supp. 2d 99, 103 (D.D.C. 220) (Bates, J.)).[2]

Indeed, the facts here make it abundantly clear why this Court and the Court of Appeals have repeatedly required the exhaustion of administrative remedies before allowing judicial review in FOIA cases, and why dismissal of plaintiff's FOIA claim against DHS is appropriate. See Wilbur, 355 F.3d at 677; Hidalgo, 344 F.2d at 1259; Oglesby, 920 F.2d at 61-62. As the Court of Appeals has noted "[e]xhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." Oglesby, 920 F.2d at 61-62. Further administrative review here may have resulted in clarifying plaintiff's request in such a manner as to allow a reasonable search among those components and those records where responsive records might reasonably have been expected to be found. For example, had plaintiff filed the required administrative appeal, he might have clarified what his papers here reveal but what was noticeably absent from the FOIA request he submitted to DHS: that the records he sought concerned his belief that he was on a terrorist watch list, and not some other interaction that he may have had with DHS at some unspecified time. With that information in hand, DHS

---

[2] Plaintiffs' effort to distinguish the cases on the grounds that they relate solely to the Internal Revenue Service ("IRS") is wholly unpersuasive, and plaintiff fails to explain why his broad request for records to DHS's multi-function bureaucracy does not pose the identical practical problem posed by broad requests to the IRS. See Pl's Opp. at 28-29. In any event, this Court has not limited the principal to IRS cases. See, e.g., Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 2006 WL 141732 (D.D.C. 2006) (Kollar-Kotelly, J.) (finding the Department of Transportation ("DOT") reasonably determined that a request for all records pertaining to the requester "did not permit a knowledgeable Department employee familiar with the DOT's systems of records to apply their expertise and with a reasonable amount of effort . . . initiate a search") (citing Dale, 238 F. Supp. 2d at 104).

may have been able to formulate a reasonable search of its records, or could have sought further clarification intended to allow such a search. By failing to provide the requested clarification or to take an administrative appeal, plaintiff denied the agency the "opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." Oglesby, 920 F.2d at 61-62. That failure fatally undermines plaintiff's FOIA claims in this Court. See Wilbur, 355 F.3d at 677; Hidalgo, 344 F.2d at 1259; Oglesby, 920 F.2d at 61-62. Because the response to plaintiff's FOIA request by DHS was not improper, Secretary Chertoff is entitled to summary judgment in plaintiff's FOIA claims.

      C.    **Administrator Hawley is entitled to Summary Judgment on Plaintiff's FOIA Claims.**

Plaintiff challenges TSA's response to his FOIA request in two respects: first, plaintiff challenges TSA's request for additional information from plaintiff so that it can determine whether certain documents located by TSA are actually records that "refer to . . . Scott Tooley." Second, plaintiff challenges TSA's refusal to confirm or deny whether plaintiff is on a terrorist watch list. Both of these challenges fail.

First, with respect to the two documents located in TSA's search, plaintiff's objection to TSA's response is again fatally infected by his eagerness to seek judicial review rather than attempt to provide the agency the information necessary to allow it to process the FOIA request he has made. As described in defendants' opening brief, TSA identified two potentially responsive documents as part of the administrative appeal process, but could not determine from the face of the documents whether they were records relating to Mr. Tooley or to some other individual with a similar name. Thus, TSA advised plaintiff that "TSA lacks specific details to ensure that your client and the individual referenced in our records are the same person," and sought further information from plaintiff in an effort to clarify the matter before releasing the

records.  Defts' Mot. at 14-15; Pavlik Decl. ¶ 14 & Attachment 2; see also 6 C.F.R. § 5.3(b) ("If a component determines that your request does not reasonably describe records, it shall tell you either what additional information is needed or why your request is otherwise insufficient . . .").  In particular, TSA determined that the U.S. Department of Justice Certification of Identity Form, to which plaintiff refers, which contains plaintiff's personal information as of the date plaintiff's FOIA request was submitted, October 2005, see Pl's Opp. at 36, did not provide the information necessary to verify the identity of the individual referenced in the two located documents.  Thus, TSA specifically sought information regarding (a) any addresses used by Mr. Tooley during June 2004, and (b) any contacts (written, telephonic or email) initiated by Mr. Tooley with TSA, including the Office(s) contacted, the general subject matter of the contact, and the approximate date range of that contact.  Pavlik Decl. Attachment 2.

Despite the clear explanation provided by TSA as to the need for such information, and the specificity of information requested, Mr. Tooley has chosen to make no response.  See Pavlik Decl. ¶ 18.  As a result, TSA cannot determine whether the two potentially responsive documents it has located relate to Mr. Tooley and will not release them absent such confirmation, as a mistaken release of the documents may constitute a violation of the Privacy Act, 5 U.S.C. § 552a(b).  See Defts' Mot. at 20-21; Pavlik Decl. Attachment 2.  TSA has indicated that it will promptly release nonexempt portions of the relevant records if they are, in fact, determined to be related to Mr. Tooley and not some other individual with a similar name.  See Pavlik Decl. ¶ 22.  Any delay in TSA's final determination as to the propriety of releasing any nonexempt portion of these records, accordingly, is occasioned purely by plaintiff's refusal to provide the necessary information.  TSA's actions are simply not improper under FOIA.

Plaintiff also challenges TSA's Glomar response to its request for information as to

whether plaintiff is on a terrorist watch list, arguing that "the government affidavit fails to articulate a plausible or credible specific harm stemming from disclosure." Pl's Opp. at 39. Plaintiff's conclusory challenge is insufficient to counter the plausible and credible showing that TSA, in fact, has made. In particular, the watch lists at issue are the No-Fly and Selectee Lists maintained by TSA, which identify individuals "who may be a threat to civil aviation or national security," or those who "are known to pose, or are suspected of posing, a risk of air piracy or terrorism or a threat to airline passenger safety." 49 U.S.C. §§ 114(h)(3), (h)(2). As the declaration provided for the TSA explains:

> TSA does not disclose the names or identifying information of individuals on TSA watch lists. The watch lists are incorporated into Security Directives and Emergency Amendments issued to air carriers and constitute [Sensitive Security Information ("SSI")] under governing regulations at 49 C.F.R. § 1530.5. In order to protect the integrity of the watch lists, TSA cannot provide any information about individuals who are or are not on the watch lists. If it were to confirm in one case that a particular individual was not on a watch list, but was constrained in another case merely to refuse to confirm or deny whether a second individual was on a watchlist, the accumulation of these answers would tend to reveal SSI.

Pavlick Decl. ¶ 21. As TSA also explains, SSI is specifically exempted from disclosure by Exemption Three of FOIA because its disclosure would be detrimental to the security of transportation. Defts' Opp. at 20; see 49 U.S.C. § 114(s).[3]

Despite plaintiff's accusation that such an explanation is neither plausible nor credible, courts have routinely accepted that federal agencies whose intelligence or law enforcement activities would be compromised by accumulated disclosures of the type described by the TSA have the right, and indeed, the responsibility, to make a Glomar response. As noted in

---

[3] Plaintiff cannot, through the vehicle of this lawsuit under FOIA, challenge TSA's determination that disclosure of SSI would be "detrimental to the security of transportation." The regulation defining SSI is an "order" of the TSA, and, as a result, is subject to judicial review exclusively in the Court of Appeals. See 49 U.S.C. § 46110(c).

defendants' opening brief, the United States District Court for the Northern District of California has specifically determined that a Glomar response is appropriate in the context of a request for information relating to the presence of particular individuals on a terrorist watch list:

> The watch lists were developed and are maintained for a law enforcement purpose. Requiring the government to reveal whether a particular person is on the watch lists would enable criminal organizations to circumvent the purpose of the watch lists by determining in advance which of their members may be questioned. . . . . While such a risk is not posed by plaintiffs, if the Court were to require the government to reveal such information to plaintiffs, it would have to require the government to do the same for all inquiries.

Gordon v. Fed. Bureau of Investigation, 388 F. Supp. 2d 1028, 1037 (N.D. Cal. 2005); see also Bassiouni v. Central Intelligence Agency, 392 F.3d 244, 246 (7th Cir. 2004) (upholding Central Intelligence Agency's Glomar response because "[p]ainstaking analysis of the patterns reflected in the agency's holdings might reveal" sensitive information), cert. denied, ___ U.S. ___, 125 S. Ct. 2945 (2005).  Other courts have upheld Glomar responses in analogous situations.  See Marrera v. U.S. Dept. of Justice, 622 F. Supp. 51, 53 (D.D.C. 1985) (upholding agency decision to refuse to confirm or deny whether particular individuals were the subject of surveillance under a warrant issued by the Foreign Intelligence Surveillance Court); Gardels v. Central Intelligence Agency, 689 F.2d 1100, 1104 (D.C. Cir. 1982) (upholding agency's refusal to confirm or deny the identity of persons with whom it had covert contacts).  Plaintiff makes no effort to distinguish any of these cases.

"[W]hen a pattern of responses itself reveals [sensitive] information, the only way to keep secrets is to maintain silence uniformly." Bassiouni, 392 F.3d at 246.  TSA has invoked this uniform policy of silence here to protect the integrity of the terrorist watch lists it maintains, information that is designated SSI and thus exempted from disclosure under FOIA.  Because TSA's refusal to confirm or deny the existence of such information is lawful, and because TSA

has otherwise acted properly under FOIA, TSA Administrator Hawley is entitled to summary judgment on plaintiff's FOIA claims.

## II. PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF AGAINST THE OFFICIAL CAPACITY DEFENDANTS SHOULD BE DISMISSED.

Plaintiff's response to the motion by the official capacity defendants to dismiss any claims for injunctive relief that may be lodged against them suffers from four fundamental defects.

First, even if plaintiff's Complaint is properly read as stating claims for injunctive relief against the official capacity defendants – which, as defendants have previously explained is not the most reasonable reading of the Complaint, see Defts' Mot. at 21-22 – plaintiff fails to explain why he has standing to seek such relief specifically against the three official capacity defendants who are movants here. Despite plaintiffs' repeated assertions that he has been wronged by the "Bush administration" and his boilerplate discussion of standing principles, plaintiff nowhere addresses the crux of the argument made by the official capacity defendants. Those defendants – Attorney General Gonzales, DHS Secretary Chertoff, and TSA Administrator Hawley – do not operate the program at the heart of plaintiff's claims – the National Security Agency's Terrorist Surveillance Program ("TSP") – and do not head the agency that does.[4] Thus, injunctive relief against these defendants will have no effect on the continued operation of the TSP. Plaintiff's failure to recognize that the relief he seeks cannot be had against these three defendants fatally undermines his ability to demonstrate the elements of causation and redressability that are critical

---

[4] Although the caption of plaintiff's complaint indicates that he has sued the President, the Vice President, and the former head of the National Security Agency in their individual capacities, it does not appear that plaintiff has made any effort to perfect those claims, and those putative parties have not appeared in these proceedings in any capacity. In any event, as described further herein, and in defendants' opening brief, plaintiff lacks standing to seek injunctive relief related to the operation of the TSP regardless of the identity of the defendant.

to establishment of his standing.[5]  See Defts' Mot. at 31.

Second, and equally critically, even if it could be established that injunctive relief against the three official capacity movants would halt surveillance under the TSP, plaintiff fails to plead the facts necessary to demonstrate that he is injured by the existence of that program, and thus does not meet the injury-in-fact requirement of the standing doctrine.  See Defts' Mot. at 26-31.  Plaintiff's opposition to defendants' motion makes it clear that all of plaintiff's wiretapping claims arise from his subjective belief that he is targeted under the National Security Agency's TSP.  See Pl's Opp. at 15-18 (describing the TSP).[6]  But plaintiff offers no credible fact from which it could be inferred that plaintiff, in fact, is subject to surveillance under the TSP.  As plaintiff himself acknowledges, the TSP targets communications where there is a reasonable basis to believe both that one party to the communication is outside the United States, and that one party to the communication is a member of al Qaeda, an affiliate of al Qaeda, or a member of an organization affiliated with al Qaeda.  See Pl's Opp. at 17.  Plaintiff makes no allegation that he falls into this group.  See, e.g., Compl. ¶ 46 (alleging that plaintiff "and/or member of his family placed and received international calls from the United States to members of his family

---

[5] Plaintiff's allegations that the named official capacity defendants acted "in concert with the NSA," Pl's Opp. at 18, or that they "participated in, and were aware of, and approved the alleged misconduct," Pl's Opp. at 25, has no bearing on the official capacity defendants' demonstration that plaintiff's claims are not redressable by injunctive relief entered against them.

[6] Although plaintiff claims "that he is subject to a wide program of surveillance, of which the NSA surveillance program is just one part," Pl's Opp. at 18; see also id. at 22 (alleging a "wider net of surveillance"), plaintiff provides no credible allegation of fact from which it might be inferred that plaintiff is in fact subject to such surveillance.  For example, plaintiff's new allegation – which appears nowhere in his Complaint – that his house was monitored by unidentified "agents," see Pl's Opp. at 22, establishes nothing other than the extremely speculative and paranoid nature of plaintiff's allegations.  Speculation of this sort is wholly insufficient to demonstrate standing.  See Flowers v. Exec. Ofc. of the President, 142 F. Supp. 2d 38, 45 (D.D.C. 2001) (Kennedy, J.) ("conclusory allegations unsupported by any factual allegations will not withstand a motion to dismiss").

who live in France").

      Instead, plaintiff claims that the mere existence of the program acknowledged by the President supports a finding that he has standing. See Pl's Opp. at 17 ("there can be question that the Surveillance Program exists"); 20 ("Defendants admit to the existence of the wiretapping program"). It does not. As the Court of Appeals held in Halkin v. Helms, 690 F.2d 977 (D.C. Cir. 1982), even where "the contours of the [intelligence] activity giving rise to [plaintiffs'] claims are spelled out in considerable detail in the record of this case and in the public reports on that activities, . . . a litigant is required to "allege that he has suffered some specific harm, not that the injury emanates from some specific source. . . . It is the nature of the injury, and not the source, that is the primary focus of concern when dealing with the question of standing." Id. at 999. As fully explained in defendants' opening brief, plaintiff's speculative and subjective belief that he may be subject to surveillance under the TSP is insufficient as a matter of law to establish standing. See Defts' Mot. at 26-30 (describing the string of assumptions that would have to be credited in order to support even the insufficient finding that plaintiff "believes" that he is harmed by the actions of these defendants); see also Laird v. Tatum, 408 U.S. 1, 15 (1972) (requiring a plaintiff seeking to challenge an alleged surveillance program to assert an "actual present or immediately threatened injury resulting from unlawful government action."); id. ("[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; 'the federal courts established pursuant to Article III of the Constitution do not render advisory opinions'").

      Third, plaintiff makes no effort to distinguish the Court of Appeals' opinion in United Presbyterian Church in the U.S.A. v. Reagan, 738 F.2d 1375 (D.C. Cir. 1984), which provides unequivocal authority for the dismissal of plaintiff's claims. As defendants have explained,

plaintiff's allegations here are no different than the allegations the Court of Appeals found in that case to be "too generalized and nonspecific to support a complaint," including the allegation that "[plaintiff] has reason to believe that, for a long time, its officers, employees, and persons associated with it have been subjected to government surveillance, infiltration, and disruption," and the allegation that "[plaintiff] discerns a long-term pattern of surveillance of its members." Id. at 1380 n.2; see Defts' Mot. at 29-30. Plaintiff's allegations here are similarly deficient, see Defts' Mot. at 25-35, and are subject to dismissal for the same reasons.

Finally, as to plaintiff's request for injunctive relief relating to his alleged presence on a terrorist watch list, plaintiff makes no adequate response to defendants' showing that he has failed to demonstrate his standing to bring such a claim.[7]  See Defts' Mot. at 31-33.[8]  More critically, plaintiff makes no response at all to defendants' explanation that this Court lacks jurisdiction to consider the relief he requests. See Defts' Mot. at 34 n.11. As defendants have explained, even if plaintiff's allegations were sufficient to demonstrate his standing to challenge his inclusion on a watch list, TSA's No-Fly and Selectee lists are Security Directives issued by TSA pursuant to 49 U.S.C. § 114(l)(2)(A). Congress has vested exclusive jurisdiction to review Directives of this type in the Court of the Appeals. 48 U.S.C. § 46110(a) & (c). Thus, only the

---

[7] Plaintiff purports to allege certain additional specific incidents – appearing nowhere in plaintiff's Complaint – that plaintiff claims demonstrate that he has been placed on a watch list. See Pl's Opp. at 21. That plaintiff may have been searched in the course of airline travel on any particular occasion, of course, demonstrates no such thing. See 49 U.S.C. 44902(c) ("An agreement to carry passengers or property in air transportation is deemed to include an agreement that the passenger or property will not be carried if consent to search for [certain] purposes . . . is not given.").

[8] Plaintiff also makes no response to defendants' demonstration that his claim that a radio tag has been placed on his vehicle is too speculative and conclusory to support his standing to seek remedial injunctive relief against the three official capacity defendants. See Defts' Opp. at 34-35.

Court of Appeals may "affirm, amend, modify, or set aside" any part of an order issued under the authority of 49 U.S.C. § 114(l).  See Gilmore v. Gonzales, 435 F.3d 1125, 1131 n.4 (9th Cir. 2006), petition for cert. filed, 75 U.S.L.W. 3074 (Aug. 4, 2006); Green v. Transp. Security Admin., 351 F. Supp. 2d 1119, 1125 (W.D. Wash. 2005).  Accordingly, even were this Court to find injunctive relief of the sort plaintiff requests appropriate, but see Defts' Mot. at 33 n. 10, the Court lacks jurisdiction to enjoin any of the official capacity defendants to "remove Plaintiff's name" from these watch lists, as this would constitute an amendment or modification of a TSA security order.

In sum, as fully described in defendants' opening motion, plaintiff's Complaint in this matter is replete with allegations that are conclusory, speculative, and unsupported by specific facts, and his memorandum filed in opposition to defendants' motion does no more than heap additional conclusory allegations upon those already presented.  These sorts of allegations do not satisfy the requirement that a plaintiff must "allege in [his] pleadings the facts essential to show jurisdiction," Flowers, 142 F. Supp. at 45, or that jurisdiction appear "affirmatively and distinctly" on the face of plaintiff's Complaint, see Flowers, 142 F. Supp. 2d at 45.  Nor do they approach the "logical adequacy" the Court of Appeals demands when evaluating a motion to dismiss.  See Judicial Watch, Inc. v. U.S. Senate, 432 F.3d 359, 360 (D.C. Cir. 2005).  As a result of these deficiencies, any injunctive relief claims that might be found to be stated against the three official capacity defendants should be dismissed under Federal Rule of Civil Procedure 12(b)(1).

**CONCLUSION**

For the reasons stated herein, and in defendants' opening brief, Attorney General Gonzales, Secretary Chertoff, and Administrator Hawley, are entitled to summary judgment on

plaintiff's FOIA claims. Moreover, to the extent the Complaint may be read as attempting to state claims for injunctive relief against these defendants in their official capacities, plaintiff's claims must be dismissed for lack of jurisdiction.

        Respectfully submitted,

        PETER D. KEISLER
        Assistant Attorney General, Civil Division

        JEFFREY A. TAYLOR
        United States Attorney

        JOSEPH H. HUNT
        Director, Federal Programs Branch

        ELIZABETH J. SHAPIRO
        Assistant Director, Federal Programs Branch

        ____/s/ Rupa Bhattacharyya_____
        RUPA BHATTACHARYYA (VA# 38877)
        Senior Trial Counsel
        Federal Programs Branch, Civil Division
        United States Department of Justice
        P.O. Box 883, 20 Massachusetts Ave., N.W.
        Washington, D.C. 20044
        Tel: (202) 514-3146; Fax: (202) 318-7593
        Email: rupa.bhattacharyya@usdoj.gov

Dated: October 16, 2006.